SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Thomas C. REED, et al., Defendants.

No. 81 Civ. 7984 (MEL).

United States District Court, S.D. New York.

May 19, 1983.

Theodore A. Levine, William R. McLucas, L. Duane Cheek, Nancy E. Watters, Wash-

ington, D.C., Donald N. Malawsky, Regional Administrator, S.E.C., New York City, of counsel, for plaintiff.

Shearman & Sterling, New York City, for defendant Thomas C. Reed; Robert F. Dobbin, Kathleen M. Comfrey, New York City, of counsel.

Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendant O'Connor & Associates; Michael W. Coffield, Robin J. Omahana, Michael D. McCormick, Chicago, Ill., of counsel.

Shustak & Weiss, New York City, for Keith Garber & Co.; Stephen Wallenstein, Andrew P. Weiss, New York City, of counsel.

LASKER, District Judge.

On December 23, 1981, the Securities and Exchange Commission (SEC) instituted a civil enforcement action against Thomas C. Reed and Frank M. Woods, alleging that on March 4, 1981 Reed and Woods purchased call options on Amax Corporation ("Amax") common stock while in possession of material, non-public information concerning, among other things, the possible acquisition of Amax by Standard Oil Company of California ("Socal"). Simultaneously with the filing of the complaint, Reed and Woods entered into a "Stipulation, Termination, Dismissal and Order" ("Order") pursuant to which they agreed, among other things, to disgorge their profits from the sale of the options and to place the funds in an escrow account, subject to the terms of an agreement ("Agreement") which was incorporated into the Order.[1] The Agreement provided that the funds would be used to satisfy

any judgment in or settlement of *O'Connor & Associates v. Dean Witter Reynolds, et al.,* 529 F.Supp. 1179 (MEL), the only action then pending against Reed and Woods in connection with their transactions in Amax stock options. The Agreement provided that any funds remaining after conclusion of the *O'Connor* litigation would be used to satisfy any other action that might be brought against Reed based on his Amax stock option transactions.

In April 1982 Keith Garber & Co. ("Garber") instituted an action against Reed, claiming that it had sold 90 Amax options to Reed and suffered a loss of more than $74,000 when it was forced to cover its obligations for the options after the tender offer for Amax was announced. In December 1982, approximately one year after the Order was entered, Garber filed the instant motion to intervene as of right in the SEC's action against Reed, pursuant to Fed.R. Civ.Pr. 24(a)(2).[2] Garber seeks to intervene with the purpose of moving to modify the Order so as to eliminate the priority given to the *O'Connor* litigation with respect to the escrow account. Garber contends that it is entitled to intervene because its ability to recover its loss fully from Reed may be impaired by the priority established for the O'Connor litigation. Garber argues that a judgment or settlement in the O'Connor litigation, which has recently been certified as a class action,[3] may leave the escrow account with insufficient funds to satisfy its own claim against Reed, and that Garber should not be forced to abandon its individual claim and join the O'Connor litigants as a class member in order to protect its rights.[4]

1. Reed placed $427,000 in the escrow account; Woods contributed $49,000.

2. Under Rule 24(a)(2), intervention as of right will be granted upon timely application

"when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

3. *See* this Court's opinion of March 25, 1983, certifying a class consisting of all persons or organizations who sold call options with March and June expiration dates in Amax stock between February 27, 1981 and March 5, 1981.

4. Garber's argument is based upon the assumption that Reed's damages will be limited to disgorgement of his profits, in accordance with *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156 (2d Cir.1980), and that therefore Garber will not be able to look to assets outside of those in the escrow account to satisfy any judgment Garber may obtain against Reed.

Reed and the SEC both oppose Garber's motion to intervene,[5] arguing that 1) intervention cannot be granted because the action has already been dismissed; 2) intervention as of right is not available in SEC enforcement actions; and 3) Garber's legitimate interests are not impaired by the terms of the Escrow Agreement.

■■■ Turning first to the question whether intervention can be granted when the action has already been settled and dismissed, we note that although intervention is not absolutely barred under such circumstances, "[i]ntervention after judgment is unusual and not often granted." 3B Moore's Federal Practice ¶ 24.13 at 24–154 (2d ed. 1982). Of course, in the instant case, since the complaint and the Order settling the action were filed simultaneously, Garber had no opportunity to move for intervention until the Order had already been entered. Even so, Garber did not approach Reed and the SEC with a request for modification of the Order until six months after the Order was entered, and did not move to intervene for another six months after that. In cases where intervention has been granted following settlement, the motion to intervene generally was made within only a few days of the settlement. *E.g., Fleming v. Citizens for Albermarle, Inc.,* 577 F.2d 236 (4th Cir. 1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979); *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065 (5th Cir.1970). Thus, the length of time that has elapsed since the Order was entered weighs heavily against the appropriateness of reopening the terms of the settlement for negotiation.

Moreover, Garber's contention that its interest in recovering damages from Reed will be impaired if it is not permitted to intervene is unpersuasive. Garber's explanation of the prejudice it will suffer from the priority given to the O'Connor litigation in the Escrow Agreement is twofold. First, Garber argues that only those in strict privity with Reed should be able to recover

from Reed, and that because a class has been certified in the O'Connor litigation which includes plaintiffs not in privity with Reed, recovery by the O'Connor class will deplete the funds in the escrow account and prevent Garber from fully recovering its loss from Reed. This argument is without merit, because the assumption upon which it is based—i.e., that only those in privity with Reed are entitled to recover their losses—is invalid. As we held in the opinion of March 25, 1983, which granted class certification in the O'Connor action, all those who traded contemporaneously with Reed while he was allegedly in possession of inside information are entitled to recover damages from him, regardless of whether they can prove that they traded directly with Reed. *See Shapiro v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 495 F.2d 228, 237 (2d Cir. 1974). If Reed's liability is limited to disgorgement of his profits, then each member of the class of plaintiffs who traded contemporaneously with Reed will recover a pro rata share of this fund, based upon the number of options each sold. *See Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156 (2d Cir.1980). Whatever disadvantage Garber suffers from the fact that recovery is available to those not in privity with Reed will not be the result of the SEC-Reed settlement, but will instead be a consequence of the legal standards governing Garber's potential recovery against Reed.

Garber's second argument is that the priority given to the O'Connor litigation under the SEC-Reed settlement will impair Garber's interests if it should choose to opt out of the O'Connor class, as it has the right to do. This impairment will result, Garber contends, because a portion of any judgment or settlement of the O'Connor litigation may be allocated to attorney's fees, and if Garber does not participate in the O'Connor class there may be little or no funds left with which to satisfy Garber's claim after conclusion of the O'Connor action. This argument also must be rejected. First, the

---

**5.** O'Connor & Associates has also filed a memorandum in opposition to Garber's motion, at the request of Reed and the SEC.

necessity of foregoing the right to opt out of the O'Connor plaintiff class does not establish an impairment of Garber's interests sufficient to warrant intervention as of right in the SEC's enforcement action against Reed. Moreover, assuming that Garber does opt out of the O'Connor litigation, Garber's interest in the amount of attorney's fees which may be paid in the O'Connor case may be protected so long as the instant motion is denied without prejudice to Garber's right to move to intervene with respect to any proposed settlement or damage award in the O'Connor litigation.

In light of the conclusion reached here, we need not decide whether private parties are barred under any circumstances from intervention as of right in SEC enforcement actions. *Compare SEC v. Everest Management,* 475 F.2d 1236 (2d Cir.1972), *with SEC v. Flight Transportation Corp.,* 699 F.2d 943 (8th Cir.1983).

For the foregoing reasons, the motion to intervene is denied.

It is so ordered.