ONEIDA INDIAN NATION OF WISCONSIN, et al, Plaintiffs,

v.

The STATE OF NEW YORK, et al, Defendants.

No. 79–CV–798.

United States District Court, N.D. New York.

Oct. 11, 1983.

See also, 691 F.2d 1070.

Native American Rights Fund, Washington, D.C., for plaintiff Oneida Indian Nation of Wisconsin; Arlinda Locklear, Francis Skenandore, Washington, D.C., of counsel.

Daan Braveman, Gary T. Kelder, Syracuse, N.Y., for plaintiff Oneida of the Thames Band.

Goodwin, Proctor & Hoar, Boston, Mass., Hiscock, Lee, Rogers, Henley & Barclay, Syracuse, N.Y., Shearman & Sterling and Huber, Lawrence & Abell, New York City, Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for defendants; Allan van Gestel, Jeffrey C. Bates, Boston, Mass., Jan R. Farr, Syracuse, N.Y., Arnold Bauman and Howard Schmertz, New York City and David Roberts, Asst. Atty. Gen., Albany, N.Y., of counsel.

Betram Hirsch, Floral Park, N.Y., for amicus curiae Oneida Indian Nation of New York.

Indian Law Resources Center, Washington, D.C., for Proposed intervenors, The Houdenosaunee and its constituent Nations except The Cayuga Nation; Robert Coulter, Curtis Berkey, Washington, D.C., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The Houdenosaunee and its constituent nations, except the Cayuga Nation, have renewed their previously-denied motion to intervene in this action as a plaintiff and to file a proposed complaint-in-intervention pursuant to Rule 24(a)(2) or, alternatively, Rule 24(b) of the Federal Rules of Civil Procedure. For the reasons herein, the motion is denied.

Familiarity with the general nature of this lawsuit is assumed. The background of this particular issue is recounted in footnote 3 of this Court's decision in 520 F.Supp. 1278, 1284 (July 24, 1981):

> On July 15, 1980, the Six Nation Confederacy and the Mohawk, Oneida, Onondaga, Cayuga, Seneca and Tuscarora Nations individually and as members of the Confederacy, believing themselves to be members of the defendant class certified by the Court in 79–CV–798, filed a motion for leave to appear and be separately represented in the action. When it was later determined that they were not intended to be class members, the parties filed a motion to intervene both as a matter of right or in the alternative permissively, pursuant to Rule 24 of the Fed.R.Civ.P.
>
> The Court heard argument on the intervention motion on October 27, 1980. Concluding that the proposed intervenors were adequately represented with respect to the issues raised on the motions to dismiss, the Court decided to defer decision on the intervention motion pending determination of those motions. The

> proposed intervenors were advised that they would be permitted to file an *amicus* brief in opposition to the motions to dismiss limited to those issues raised on the motions. A brief was filed on behalf of the Six Nations and its constituent members, and counsel for the Confederacy was allowed to participate in oral argument.
>
> Because defendants' motion to dismiss was granted by this Court, the motion to intervene was simultaneously deemed moot, and denied without prejudice. 520 F.Supp. at 1329.

An appeal of the dismissal was taken, in which the Houdenosaunee participated as *amicus curiae*. The Court of Appeals reversed-in-part, and remanded the case to this Court "for additional proceedings in order to fully develop the complex factual and legal issues underlying certain claims raised by the Oneidas." 691 F.2d 1070, 1073 (2d Cir.1982). The proceedings ordered by the Court of Appeals have not yet commenced. Thus, this motion to intervene arises while the original motion to dismiss is still pending.

The complaint-in-intervention proposed by the movants largely tracks the language of the original complaint. The major difference is that the Houdenosaunee itself claims ownership of and the right to possess the subject lands. Additional allegations in support of the Houdenosaunee claim appear in paragraphs 8–9, 29, and 37–39 of the proposed complaint-in-intervention. Of particular significance are the following:

37. At all pertinent times, the State of New York and the United States knew that no nation of the Houdenosaunee had authority to sell or otherwise give up any of the territory of the Confederacy including the land which is the subject of his suit. Only the Chiefs representing all the Nations of the Confederacy could do so.

38. Since time immemorial, particularly since the formation of the Confederacy, at least 1,000 years ago, the Confederacy has been the lawful owner of virtually all

the land that is now known as western, central, and upstate New York. Although each nation has continued to live predominantly within its traditional portion of the Houdenosaunee territory, no formal boundaries exist between the nations. Rather, the land is held as one entire territory of the Houdenosaunee. 39. Even if it were possible or proper to establish boundaries between the nations, the subject land includes land that would belong to the Mohawk Nation to the east, the Onondaga Nation to the west, and perhaps to the Cayuga Nation. The bulk of the subject land is regarded within the Houdenosaunee as Oneida land and as part of the whole Houdenosaunee territory. As part of the Confederacy, other nations resided there during the period in question, particularly the Tuscarora Nation.

The movants also would assert a claim under 42 U.S.C. § 1983 for deprivation of rights secured by federal law, treaties, and the Articles of Confederation, ¶ 54; and claims based on waste, ¶ 55, and conversion of natural resources, ¶ 55. Relief is also requested against the state for breach of its fiduciary obligations, *Prayer for Relief* ¶ 4, a claim not raised by the plaintiffs.

*Intervention of Right*

Fed.R.Civ.P. 24(a)(2) confers a right to intervene in an action:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

■ "The district court is entitled to the full range of reasonable discretion in determining whether these requirements have been met." *Rios v. Enterprise Ass'n Steamfitters Local Union No. 638*, 520 F.2d 352, 355 (2d Cir.1975); *United States v. State of New York*, 99 F.R.D. 130 at 133 (N.D.N.Y.1983) (Foley, J.).

■ The opponents of intervention contend, and the Court agrees, that movants may not intervene under Rule 24(a)(2) because (1) their interest is largely aligned with that of the Oneidas and, to that extent, they are adequately represented; (2) to the extent that their interests are adverse to those of the Oneidas, their ability to protect such interests will not be impaired in this lawsuit.

The proposed complaint-in-intervention exhibits three aspects. First, the movants assert essentially the same claim against the defendants as that asserted by the Oneida plaintiffs. To be sure, the movant's pleading is amplified by the presence of certain alternative bases for relief (i.e., the § 1983 claim and the claims based on waste, conversion, and breach of fiduciary obligation), but the substance of this aspect of their claim is identical to that of the Oneidas. As described by the Court of Appeals, their claim is that "their aboriginal title to their land, confirmed and guaranteed by federal treaties and pronouncements pursuant to powers delegated to the federal government under the Articles of Confederation, was never extinguished since the state treaties were improperly concluded without federal consent." *Oneida Indian Nation of New York v. State of New York, supra*, 691 F.2d at 1074.

It is this particular claim that was dismissed by this Court, then reviewed and remanded by the Court of Appeals. In the forthcoming proceedings the Oneidas and the movants will be exactly aligned with respect to every remanded issue:

(1) Each would need to establish that Article IX cl. 1 of the Articles of Confederation—which conferred upon Congress the power to make war and peace and to enter into treaties—included the power to make treaties with Indian tribes, and that the Fort Stanwix Treaty of 1784 was a valid exercise of those powers and was therefore binding on New York State;

(2) Each would also seek to establish that the Article IX cl. 1 powers of Congress were not meant to be limited by the quali-

fied power of Congress, under cl. 4, to manage Indian affairs;

(3) Each would also have to prove that the Fort Stanwix Treaty of 1784 precluded New York from unilaterally extinguishing Indian title to tribal land located within its borders.

(4) Each would also contend that the Proclamation of 1783 was authorized by Article IX cl. 4, and was meant to protect the lands of all non-assimilated Indians, and not merely those Indians upon lands outside state borders.

(5) Each would, if the issue is reached, have to produce evidence that the Treaty of Canadaigua did not constitute a relinquishment of the possessory rights now claimed.

■ "An applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden 'should be treated as minimal.'" *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978), quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). A frequently-invoked standard, first articulated by Justice (then Judge) Blackmun, states that inadequacy of representation may be shown by:

> proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, or by the failure of the representative in the fulfillment of his duty.

*Stadin v. Union Electric Co.*, 309 F.2d 912, 919 (8th Cir.1962).

In this instance there are no allegations—nor could there be credible allegations—of collusion or of anything less than vigorous, competent advocacy by the plaintiffs. A contention that the Oneida representation is inadequate could only be plausibly made on the ground of adversity of interest. Yet, as shown above, when the first aspect of the complaint-in-intervention is closely examined, it is evident that the Oneidas and the movants have non-adverse, indeed identical, interests.

■ To be sure, if the remand proceedings conclude favorably for the Oneidas, the defendants might then assert certain defenses which could be more effective against the Oneidas than against the Houdenosaunee. However, the possible inapplicability of a defense against a proposed intervenor does not alone indicate inadequacy of representation so as to confer a right to intervene. *Ionian Shipping Co. v. British Law Ins. Co.*, 426 F.2d 186 (2d Cir.1970).

Indeed, it is evident from the movants' papers and from their oral argument that the impetus for this motion to intervene is not fear of inadequate representation with respect to the claim that they share with the Oneidas—the claim that the subject lands could not lawfully be conveyed to the state without federal consent. It is, rather, to introduce into this litigation the independent claim of the Houdenosaunee to the subject land. This independent claim may be regarded as the second aspect of the complaint-in-intervention.

There can be little doubt but that the second aspect of the complaint-in-intervention is an assertion of interests adverse to those of the Oneidas, and with respect to which representation by the Oneidas would be inadequate, to state the obvious. In allegations reproduced on page 446, *supra*, movants state that most of upstate New York, including the instant claim areas, belongs to the Houdenosaunee as a confederacy and that the subject land is not the separate property of the Oneidas apart from the Confederacy. Movants also contend that the Oneidas lacked authority from the Houdenosaunee to enter into the treaties with New York State whereby the land was conveyed. Complaint-in-intervention ¶¶ 29, 37.

In support of their allegations, movants will seek to establish, *inter alia*, that under the "Great Law of the Houdenosaunee, called Gayanerakowa," member nations could not convey land without the approval of the Confederacy as a whole; that for this reason the treaties of Fort Stanwix and Canadaigua, which guarantee tribal ti-

tle, were made with the Confederacy and not with the individual nations; that it is the possessory rights of the Houdenosaunee which are protected by treaties with the United States, and not the possessory rights of the Confederacy's constituent nations. See *Memorandum of Movants* 10–12.

In the Court's view, the second aspect of the complaint-in-intervention raises new and difficult questions of law and fact not raised by the Oneida complaint. These issues will not be adjudicated unless intervention is granted. Thus, the interests of the Houdenosaunee with respect to their independent claim will not be impaired, even as a practical matter, by the continuation of this lawsuit in their absence.

For example, in the event the Oneidas prevail in this litigation, the Houdenosaunee would retain a full opportunity to assert their claim of a title superior to that of the Oneidas, and to introduce any historical evidence available in support of that claim.

If, however, defendants succeed in obtaining the dismissal of the Oneida claim at the conclusion of the remand proceedings, the grounds for dismissal will necessarily be grounds that would have defeated the movants' claim as well, but the movants would have been adequately represented with respect to those issues.

As a third and final possibility, if the Oneidas were to defeat the motion to dismiss, but defendants were to obtain a judgment in their favor at some subsequent stage, the Houdenosaunee would remain unhampered by that judgment insofar as it seeks to raise its independent possessory rights.

The third aspect of the complaint-in-intervention is comprised of allegations that, if Houdenosaunee land were severable, the area claimed by the Oneidas infringes upon land that might be regarded as belonging to the Mohawks, Cayugas and Tuscaroras. This aspect may be analyzed in a manner similar to the second aspect: the Mohawks, Cayugas and Tuscaroras are adequately represented with respect to the allegations in the Oneida complaint that tribal land could not be conveyed to the state without federal consent. To the extent that the Oneida claim is adverse to the potential claims of other tribes, the contendors' interests will not be impaired in this action and may be litigated separately without prejudice.

In concluding this section, the Court notes that the rule governing intervention is an attempt to balance competing interests of the parties, and conflicting interests of the court itself. Often, as is the case here, the movant seeks to represent an interest which it believes is not sufficiently protected or promoted in the action, while a party or the parties in the action oppose intervention because it will delay the prompt resolution of a claim or defense. From the Court's perspective, intervention may promote judicial economy by resolving related issues in one lawsuit, but at the expense of rendering the single lawsuit more complex and protracted, perhaps to the point of unmanageability.

In this instance, the Court is of the view that the balance weighs heavily in favor of non-intervention. The introduction of the movants' claims and the inevitable incorporation into this suit of new and extensive areas of disputed law and fact promises to render this lawsuit intolerably complex and possibly interminable. Rule 24(a)(2) cannot, and in the Court's view does not, warrant such result.

*Permissive Intervention*

▉ The Court may, in its discretion, permit movants to intervene "when the applicant's claim or defense and the main action have a question of law or fact in common." The movants clearly meet the formal criteria for permissive intervention. Nevertheless, a host of reasons counsel against granting the motion. There are serious dangers that adjudicating the new issues raised in the complaint-in-intervention would unduly complicate and delay resolution of the Oneida claim; would entangle the Court in an inter-tribal dispute which may ultimately prove non-justiciable; would require the defendant class to liti-

gate matters beyond those for which the class was certified; would subject residents of lands outside the claim area to potential impairment of title due to the Houdenosaunee's allegation of ownership of most of New York State; would necessitate joinder of other Indian nations affected by the movants' claims. The Court therefore declines to permit intervention pursuant to Rule 24(b).

Though the Court herein finds it necessary to deny the motion to intervene under Rule 24, it will consider granting leave for movants to submit legal briefs as *amicus curiae* when in the course of these proceedings such briefing is appropriate. The Court is of the view, however, that the forthcoming evidentiary hearing with respect to the issues identified by the Court of Appeals is not an appropriate occasion for amicus participation, and leave is not granted for participation therein.

The motions under Rules 24(a)(2) and 24(b), Fed.R.Civ.P. are hereby denied.

IT IS SO ORDERED.