922 F.2d 92
 18 Fed.R.Serv.3d 579
 WASHINGTON ELECTRIC COOPERATIVE, INC., Plaintiff,
v.
MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC CO., Defendant-Appellee,
Green Mountain Power Corp., Village of Hardwick; Village of
Ludlow; Village of Swanton; Village of
Morrisville; Village of Lyndonville;
and Village of Stowe, Trustee/Defendants,
State of Vermont Department of Public Service,
Plaintiff-Intervenor-Appellant.
 No. 112, Docket 90-7333.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 13, 1990.
Decided Dec. 18, 1990.
 
 William Griffin, Chief Asst. Atty. Gen., Montpelier, Vt. (Jeffrey L. Amestoy, Atty. Gen. for the State of Vt., Montpelier, Vt., of counsel) for plaintiff-intervenor-appellant.
 Gerald J. Caruso, Boston, Mass. (Nicholas J. Scobbo, Jr., Ann Ryan-Small, Geraldine M. Corrado, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Boston, Mass., and John Parker, Parker & Ankuda, Springfield, Vt., of counsel) for defendant-appellee.
 Before LUMBARD, WINTER and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 The Vermont Department of Public Service ("VDPS") appeals from the denial of its motion to intervene as a plaintiff in a suit filed by the Washington Electric Cooperative, Inc. ("WEC") against the Massachusetts Municipal Wholesale Electric Company ("MMWEC"). In the underlying action, WEC sought to recover $924,208.71 paid to MMWEC under a Power Sales Agreement previously declared void by the Vermont Supreme Court. Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co., 151 Vt. 73, 558 A.2d 215 (1988), cert. denied --- U.S. ----, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989). VDPS argues that the district court erred in finding that its statutory powers did not include the capacity to intervene in the action, and that, even if it had the capacity, it could not satisfy the requirements for either intervention as of right under Fed.R.Civ.P. 24(a)(2) or permissive intervention under Fed.R.Civ.P. 24(b).
 
 
 2
 We hold that VDPS has the capacity under Vermont law to intervene in this action, but has failed to satisfy the criteria for intervention as of right or by permission under Fed.R.Civ.P. 24. Accordingly, the judgment of the district court denying VDPS's motion to intervene is affirmed.
 
 BACKGROUND
 
 3
 VDPS is a Vermont state agency created to "supervise and direct the execution of all laws relating to ... [the] [s]upervision and regulation of the organization and operation of electric cooperatives...." Vt.Stat.Ann. tit. 30, Sec. 2(a)(12) (1986). WEC is an electrical cooperative, being authorized to "generate, manufacture, purchase, acquire, accumulate and transmit electric energy; and to distribute, sell, supply and dispose of electric energy to its members, to governmental agencies and political subdivisions...." Id. Sec. 3002(4).
 
 
 4
 MMWEC is a public corporation and a political subdivision of the Commonwealth of Massachusetts. Mass.Gen.Laws Ann. ch. 164, app. Sec. 1-1 et seq. (West 1980). It functions as a joint planning and action agency through which member and nonmember utilities may acquire supplies of energy. Thirty-one Massachusetts municipalities presently are members of MMWEC. Since 1976, MMWEC has made energy supplies available through its ownership interests in various electric power facilities. Each ownership interest, as well as the separate planning and financing process through which it is acquired, is known as a "project." Member and non-member utilities contract with MMWEC to acquire a share of a project's power-generating capability by executing Power Sales Agreements with MMWEC. The revenues derived from these agreements are used in turn to finance further acquisitions of ownership interests by MMWEC.
 
 
 5
 In 1979, four Vermont municipalities (the Villages of Ludlow, Lyndonville, Morrisville and Northfield) and two non-profit electric cooperatives (WEC and the Vermont Electrical Cooperative) (all hereafter referred to as "the Vermont participants"), contracted with MMWEC for shares of the power-generating capability of its Project No. 6.[1] Project No. 6 was the title given to MMWEC's 6.001 percent ownership interest in a nuclear power plant that was to be built in Seabrook, New Hampshire. Under the agreements, each Vermont participant obtained the right to a portion of "the amounts of electrical capacity and energy ... which the Project is capable of producing at any particular time."
 
 
 6
 In 1985 VDPS filed a complaint in Vermont Superior Court against MMWEC and the Vermont participants, seeking to declare void the sales agreements involving Project No. 6 on the ground that the Vermont participants were without authority to enter into such agreements. The Superior Court granted summary judgment in favor of the defendants. On appeal, the Vermont Supreme Court reversed the decision, ruling that the Vermont participants lacked the authority to enter into the broad delegations of responsibility contained in the sales agreements and declaring the agreements void ab initio. Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co., 151 Vt. 73, 90, 558 A.2d 215, 255 (1988), cert. denied, --- U.S. ----, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989).
 
 
 7
 Before the Power Sales Agreements were declared void, WEC and the other Vermont participants had paid MMWEC a total of $6,200,733.71 due under the agreements. WEC's share of this amount was $924,208.71. It paid its share from revenues received from its customers.
 
 
 8
 After the Vermont Supreme Court ruling, WEC filed a complaint in Vermont Superior Court in March, 1989, seeking recovery of the money it had paid under the sales agreement. In the complaint, WEC prayed for a judgment of $924,208.71 against MMWEC and for the issuance of trustee process for the purpose of reaching any part of that sum that might be found in the hands of the other Vermont participants as a result of their dealings with MMWEC. On March 27, 1989, MMWEC removed the action to the United States District Court for the District of Vermont. On October 30, 1989, VDPS filed a motion for intervention on behalf of the Vermont participants' ratepayers. Through this device, it sought on behalf of the ratepayers not only the money paid by WEC to MMWEC, but also the money paid by the other six Vermont participants in Project No. 6. The district court denied VDPS's motion, finding that the Vermont statute did not confer upon it the capacity to intervene in an action brought against an out-of-state wholesale supplier of electricity and that, in any event, it did not satisfy the prerequisites for intervention in a federal action. In response to the decision, Vermont enacted into law Senate Bill No. 379, which expressly authorizes VDPS to represent the interests of the state and Vermont ratepayers in this action. S. Bill 379, 60th Leg., 2d Sess., 1989 Vt. Laws 42 ("Bill No. 379").
 
 DISCUSSION
 
 9
 I. VDPS's Capacity to Sue MMWEC for Monetary Damages
 
 
 10
 We disagree with the district court's determination that VDPS had no statutory authority to sue an out-of-state electrical wholesaler for money damages and, consequently, lacked the authority to intervene in this action.
 
 
 11
 VDPS has the statutory duty to supervise Vermont electric cooperatives. Vt.Stat.Ann. tit. 30, Sec. 2(a)(12). Municipal and investor-owned utilities also are subject to VDPS's supervision. Id. Secs. 201(a), 203. VDPS supervises the utilities by reviewing proposed changes in rate schedules and by representing the consuming public before the Vermont Public Service Board ("Board"). Id. Sec. 2(a)(6). VDPS may investigate and prosecute the complaints of ratepayers before the Board, id. Sec. 208, as well as bring proceedings to enjoin violations of state law by public service corporations. Id. Sec. 32. Although the Board is the final arbiter of the reasonableness of utility rates, id. Secs. 218(a), 226(a), (b), 227, VDPS, as advocate for the ratepayer, may challenge the actions and rates of the utilities. Id. Secs. 2(a)(6), 217. Finally, VDPS may exercise its jurisdiction over electrical cooperatives and other such public service corporations "so far as may be necessary to enable [it] to perform the duties and exercise the powers conferred upon [it] by law." Id. Sec. 203.
 
 
 12
 Under Vermont law, an administrative agency "has only such powers as are expressly conferred upon it by the legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted." Trybulski v. Bellows Falls Hydro-Elec. Corp., 112 Vt. 1, 7, 20 A.2d 117, 120 (1941). Because VDPS's purpose in the instant suit is to ensure that monies improperly paid to MMWEC are recovered and, if appropriate, distributed to the ratepayers, its interest arises from its role as advocate for the consuming public and supervisor of state electrical cooperatives. Cf. Vermont Dep't of Pub. Serv. v. Gallagher, No. S34-85LC (LaMoille Sup.Ct. Aug. 26, 1985) (VDPS has power to sue electric cooperative for money damages based on improper bonus payment to employee).
 
 
 13
 Furthermore, since the district court's finding of no capacity, the Vermont legislature has passed and signed into law Bill No. 379 "to clarify existing law to expressly authorize the department of public service to represent the ratepayers of this state in legal proceedings." Bill No. 379 provides:Notwithstanding any other law to the contrary the department of public service is authorized to represent the interests of the state and Vermont ratepayers in a certain pending legal proceeding in the United States District Court for the District of Vermont entitled, Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Company, Civil Action No. 89-94, or in any other legal proceeding arising out of the Project No. 6 Sales Agreements.
 
 
 14
 S. Bill 379, 60th Leg., 2d Sess., 1989 Vt. Laws 42. At the very least, Bill No. 379 ratifies VDPS's interpretation of its own statutory powers, and, in any event, provides a clear legislative mandate for the courts to follow. See In re Spencer, 152 Vt. 330, 336-37, 566 A.2d 959, 962 (1989) (legislative ratification of agency's interpretation of own authority must be enforced by courts).
 
 
 15
 Contrary to MMWEC's contention, Bill No. 379 does not conflict with existing law. See Cambridge v. Underhill, 124 Vt. 237, 241, 204 A.2d 155, 158 (1964) ("If the circumstances clearly indicate clarification to be intended, it would be absurd ... to derive [from a new act] an interpretation of a prior statute contrary to all other indications of legislative intent."). Thus, a remand so that the court "most familiar with Vermont laws" can interpret Bill No. 379, as suggested by MMWEC, is not necessary; the Vermont Supreme Court already has allowed VDPS to sue MMWEC in the proceedings in which it declared the sales agreements void ab initio. Vermont Dep't of Pub. Serv., 151 Vt. at 75, 558 A.2d at 216. Although that proceeding was a suit in equity and VDPS seeks money damages here, we see no significance in this difference insofar as capacity to sue is concerned, and MMWEC indicates none.
 
 
 16
 Similarly, MMWEC argues mistakenly that Bill No. 379 violates federal and state constitutional principles that prohibit legislative impairment of contracts and unequal treatment under the law. Because we find that VDPS had the capacity to sue MMWEC on the contract before its passage, Bill No. 379 does not retroactively impair the obligation of contracts in violation of article 1, section 10 of the United States Constitution. Furthermore, Bill No. 379 deals only with a procedural matter and would not affect the substantive rights of any party to the sales agreement. Also, Bill No. 379 presents no equal protection problems under either the fourteenth amendment or chapter 1, article 7 of the Vermont Constitution because it reinforces VDPS's ability to advocate the rights of all energy consumers in the state.
 
 
 17
 II. VDPS's Right to Intervene Under Rule 24(a)(2)
 
 
 18
 The denial of a motion to intervene under Rule 24(a)(2) is reviewed under an abuse of discretion standard. United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 990-91 (2d Cir.1984). We find no such abuse in the district court's denial of the Rule 24(a)(2) motion.
 
 
 19
 Rule 24(a)(2) provides a four part test for intervention as of right:
 
 
 20
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 21
 Fed.R.Civ.P. 24(a)(2); see also Farmland Dairies v. Commissioner of New York Dep't of Agric., 847 F.2d 1038, 1043 (2d Cir.1988); United States v. State of New York, 820 F.2d 554, 556 (2d Cir.1987); Restor-A-Dent Dental Laboratories, Inc. v. Certified Aloe Prods., Inc., 725 F.2d 871, 874 (2d Cir.1984). All four parts of the test must be satisfied to qualify for intervention as of right. State of New York, 820 F.2d at 556. The timeliness of the motion is not disputed in the instant case. However, VDPS fails on all three of the remaining requirements and therefore does not qualify under the rule.
 
 
 22
 The first of the remaining requirements, that the putative intervenor have an interest in the proceeding, requires that that interest be direct, substantial, and legally protectable. Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); H.L. Hayden Co. v. Siemens Medical Systs., Inc., 797 F.2d 85, 88 (2d Cir.1986); Restor-A-Dent, 725 F.2d at 874. An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule. H.L. Hayden Co., 797 F.2d at 88; Restor-A-Dent, 725 F.2d at 874. Here, VDPS's interest is based upon a double contingency: WEC first must win a judgment against MMWEC, and the Board then must determine that ratepayers are entitled to a percentage of that recovery. Such an interest cannot be described as direct or substantial.
 
 
 23
 Moreover, the "property or transaction which is the subject of the action" in which VDPS seeks to intervene is the payment made by WEC to MMWEC under the Project No. 6 sales agreement. Yet, if VDPS's motion were granted, the present case would be changed radically. The nature of the action would be transformed from one in which one party sues another on a contractual claim for damages in the sum of $924,208.71, to one in which the original plaintiff is joined by another purporting to represent six other signatories to the contract and in which the recovery sought is $6,200,733.71. Intervenors must take the pleadings in a case as they find them. General Ins. Co. of Am. v. Hercules Constr. Co., 385 F.2d 13, 18 (8th Cir.1967); In re V-I-D, Inc., 177 F.2d 234, 236 (7th Cir.1949), cert. denied, 339 U.S. 904, 70 S.Ct. 518, 94 L.Ed. 1333 (1950); United States v. Houde Eng'g Corp., 9 F.Supp. 836, 839 (W.D.N.Y.1935). WEC's complaint defined the general scope of the action and VDPS cannot now by intervention radically alter that scope to create a much different suit.
 
 
 24
 The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved. Reich v. Webb, 336 F.2d 153, 160 (9th Cir.1964), cert. denied, 380 U.S. 915, 85 S.Ct. 890, 13 L.Ed.2d 800 (1965). However, the rule is not intended to allow for the creation of whole new suits by intervenors. See Sierra Club v. United States Army Corps of Eng'rs, 709 F.2d 175, 176-77 (2d Cir.1983) (per curiam); Rios v. Enterprise Ass'n Steamfitters, Local 638, 520 F.2d 352, 358 (2d Cir.1975); Stein v. Wirtz, 366 F.2d 188, 189 (10th Cir.1966), cert. denied, 386 U.S. 996, 87 S.Ct. 1316, 18 L.Ed.2d 344 (1967). The courts retain discretion to determine when intervention is appropriate. Hooker Chemicals, 749 F.2d at 983; see also Oneida Indian Nation of Wisconsin v. New York, 102 F.R.D. 445, 449 (N.D.N.Y.1983) (intervention denied where it "may promote judicial economy ... but at the expense of rendering the single lawsuit more complex and protracted").
 
 
 25
 If VDPS were permitted to intervene, the district court would no longer preside over a conventional contractual dispute between two parties, but, in addition, would have to determine both the rights of the other signatories as urged by their self-appointed representative and how much (if anything) should be returned to the energy consumers of Vermont. Intervention cannot be used as a means to inject collateral issues into an existing action. See Sierra Club, 709 F.2d at 176-77; Rios, 520 F.2d at 356-57; Sharif v. New York State Educ. Dep't, 709 F.Supp. 365, 368 (S.D.N.Y.1989).
 
 
 26
 Appellant cites Gulf States Utilities Co. v. Alabama Power Co., 824 F.2d 1465 (5th Cir.1987) to support the contention that its interest in advocating the rights of Vermont energy consumers is sufficient. In Gulf States, the Louisiana Public Service Commission ("LPSC") was permitted to intervene in a contractual dispute between a public utility that sold electricity to Louisiana customers and the company that sold electricity to the utility. Id. at 1475. The LPSC, however, had an important interest in intervening, because Louisiana law required that it "investigate the reasonableness and justness of all contracts" entered into by the utility, and "disallow as an operating expense of [the utility]" any unreasonable payments made to the energy suppliers. La.Rev.Stat.Ann. Sec. 45:1176 (West 1982). The LPSC was the actual regulator of energy rates, and thus would have to determine whether costs incurred under the contract could be passed along to energy consumers. Gulf States, 824 F.2d at 1476. By contrast, VDPS's powers are not so broad and there is no statutory directive that it monitor the reasonableness of all contracts entered into by Vermont utilities. Also, under the Vermont regulatory structure, it is the Vermont Public Service Board, not VDPS, that sets the rates that a utility may charge, Vt.Stat.Ann. tit. 30, Secs. 218(a), 226(a), and that may order the repayment of amounts collected in excess of the set rates. Id. Secs. 226(b), 227(b).
 
 
 27
 As noted previously, intervention as of right requires a showing that disposition of the proceeding without the involvement of the putative intervenor would impair the intervenor's ability to protect its interest. In the action initiated by WEC, the sole issue is whether WEC may recover from MMWEC payments made on a contract that has been nullified. However, VDPS here seeks to protect the rights of WEC ratepayers, as well as those of the customers of the other six participants. Disposition of the instant proceeding without the participation of VDPS therefore will not operate to bar under the doctrines of res judicata or collateral estoppel any future attempts by VDPS to pursue these concerns. See Ionian Shipping Co. v. British Law Ins. Co., 426 F.2d 186, 190 (2d Cir.1970). Because this is not a case of first impression involving the resolution of new legal issues but a conventional contractual dispute, the doctrine of stare decisis also will not control future, related actions by VDPS. See Natural Resources Defense Council v. Nuclear Regulatory Comm'n, 578 F.2d 1341, 1345 (10th Cir.1978); Ionian Shipping, 426 F.2d at 191.
 
 
 28
 Finally, VDPS has not shown that there will be inadequate representation of its rights unless it is allowed to intervene. While the burden of showing such inadequacy may be minimal, Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972) (citation omitted), there is no persuasive evidence that WEC will not pursue its contractual claim vigorously. Natural Resources Defense Council v. New York State Dep't of Environ. Conservation, 834 F.2d 60, 62 (2d Cir.1987); see also United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir.1978). WEC and VDPS may have differing motives for recovering the money paid to MMWEC; the former wants the money back for itself, while the latter wants to assure that money due consumers is returned to them. However, a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action. Natural Resources Defense Council, 834 F.2d at 61-62.
 
 
 29
 Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured. See Ionian Shipping Co., 426 F.2d at 191. Here, WEC and VDPS have an identity of interest regarding the single issue before the court, that a refund should be paid to WEC. If, after that claim is settled, the management of WEC does not distribute funds recovered in a manner deemed satisfactory by VDPS, VDPS may seek an injunction either before the Board, Vt.Stat.Ann. tit. 30, Sec. 2(c), or in the Vermont state courts. Id. Sec. 32.
 
 
 30
 III. VDPS's Motion for Permissive Intervention Under Rule 24(b)
 
 
 31
 Reversal of a denial of permissive intervention is only appropriate where the district court exceeds its broad discretion. Natural Resources Defense Council, 834 F.2d at 62. Here, the district court found that permissive intervention would unduly complicate and further delay the litigation. This finding has adequate support in the record. VDPS would inject issues of Vermont regulatory law into a contractual dispute. The potential for delay and the complication engendered by the injection of such issues justify denial of the motion. Restor-A-Dent, 725 F.2d at 877. Thus, we find no abuse of discretion by the district court.
 
 CONCLUSION
 
 32
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Another Vermont municipality, the Village of Stowe, purchased a share of the Project No. 6 capability by contracting with the Village of Morrisville for a share of its entitlement under the Power Sales Agreement. For the purposes of this opinion, Stowe will be considered a direct participant in the Project since it has been treated as such throughout the course of these proceedings