15-1086-cv
Laroe Estates, Inc. v. Town of Chester

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: January 27, 2016          Decided: July 6, 2016)

Docket No. 15-1086-cv

————————————————————

Laroe Estates, Inc.,

*Movant-Appellant*,

v.

Town of Chester,

*Defendant-Appellee.*[*]

————————————————————

Before:

CALABRESI, LYNCH, and LOHIER, *Circuit Judges*.

Laroe Estates, Inc. ("Laroe"), a real estate development company, appeals from an order of the District Court (Ramos, J.) denying its motion to intervene under Rule 24 of the Federal Rules of Civil Procedure in pending litigation in which Steven Sherman, a now-deceased land developer, sued the Town of Chester (the "Town") alleging a regulatory taking. Laroe claims that it owns the property that is the subject of Sherman's dispute with the Town. The District Court denied Laroe's motion to intervene because Laroe lacked standing to assert a takings claim against the Town. Because we do not

_____

[*] The Clerk of the Court is directed to amend the caption of this case as set forth above.

require proposed intervenors to show that they independently have standing when there is a genuine case or controversy between the existing parties, we **VACATE** the order and **REMAND** to the District Court to determine in the first instance whether Laroe met the requirements of Rule 24.

JOSEPH J. HASPEL, Joseph J. Haspel, PLLC, Goshen, NY, *for Movant-Appellant*.

ANTHONY F. CARDOSO (Steven C. Stern, *on the brief*), Sokoloff Stern LLP, Carle Place, NY, *for Defendant-Appellee*.

LOHIER, *Circuit Judge*:

In this appeal we consider whether a proposed intervenor must demonstrate that it has standing even when there is a genuine case or controversy between the existing parties that satisfies the requirements of Article III of the Constitution. The answer is no.

Steven Sherman, a now-deceased land developer, previously sued the Town of Chester (the "Town") alleging a regulatory taking. That litigation remains pending in the United States District Court for the Southern District of New York (Ramos, J.). Laroe Estates, Inc. ("Laroe"), a real estate development company, claimed that it, not Sherman, currently owns the property that is the subject of Sherman's dispute and sought to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. Rather than

2

determine whether Laroe satisfied the requirements of Rule 24, the District Court denied Laroe's motion on the ground that Laroe lacked standing to assert a takings claim against the Town.  Because we do not require proposed intervenors in this circumstance to show that they independently have standing, we **VACATE** the order and **REMAND** to the District Court to determine in the first instance whether Laroe met the requirements of Rule 24.

## BACKGROUND

This is the second time that this Court has considered a dispute related to the abandoned MareBrook development project in the Town of Chester.  When we last did so, the District Court had dismissed Sherman's regulatory takings claim against the Town because it was unripe.  Sherman v. Town of Chester, No. 12 Civ. 647 (ER), 2013 WL 1148922, at *9 (S.D.N.Y. Mar. 20, 2013).  We reversed that decision, holding that the claim could proceed even though the Town never "rendered a final decision on the matter."  Sherman v. Town of Chester, 752 F.3d 554, 561 (2d Cir. 2014) (quotation marks omitted).  That conclusion was based on the extraordinary facts of Sherman's case—facts that are fully recounted in our previous decision, with which we assume

3

familiarity. We remanded the case back to the District Court to consider Sherman's takings claim on the merits. Id. at 569.

Shortly thereafter, Laroe filed a motion to intervene, purporting to be the equitable owner of the property at issue in Sherman's dispute. Laroe claims that it entered into a purchase agreement with Sherman in June 2003 (the "2003 Agreement"), pursuant to which Sherman agreed to sell Laroe three parcels of land within the proposed MareBrook subdivision. In exchange, Laroe agreed that it would pay $60,000 for each lot approved for development within the three parcels once Sherman's plans were approved by the Town. The agreement also required Laroe to make $6 million in interim payments while Sherman sought the Town's approval. The interim payments were secured by a mortgage that Sherman provided to Laroe "encumbering all of the Development Property." Joint App'x 192. If Sherman failed to obtain the Town's approval of a sufficient number of lots, Laroe retained the right to terminate the agreement. Over the next year, Laroe advanced Sherman more than $2.5 million for the project.

Although Sherman's efforts to secure the Town's approval stretched on, Laroe did not terminate the agreement. But in April 2013 TD Bank, which

4

held a superior mortgage interest in the property, commenced a foreclosure proceeding. Hoping to salvage the deal in view of the foreclosure, Laroe and Sherman signed a new contract (the "2013 Agreement") amending their earlier purchase agreement. The 2013 Agreement provided that the $2.5 million Laroe had already advanced Sherman, plus any amount paid to settle Sherman's obligation to TD Bank, would constitute the purchase price of the property. Once the Town approved the development, Laroe was required to transfer a certain number of lots back to Sherman depending on how many were approved by the Town. Subject to this requirement, the parties deemed the purchase price for the property "paid in full." Joint App'x at 234. To resolve TD Bank's foreclosure proceeding, the 2013 Agreement also granted Laroe the sole discretion to settle the debt owed to TD Bank and alternatively permitted Laroe to terminate the Agreement if Laroe and TD Bank failed to reach a settlement before the foreclosure sale. Laroe ultimately failed to satisfy Sherman's obligations to TD Bank. On May 21, 2014, a foreclosure sale occurred, and TD Bank took possession of the property. Laroe nevertheless chose not to terminate the agreement.

5

Throughout this period, Sherman (and subsequently his estate) continued litigating his takings claim. After we remanded the case, Laroe sought to intervene. By order dated March 31, 2015, the District Court denied the motion, concluding that Laroe's claim against the Town was futile. Sherman v. Town of Chester, No. 12 Civ. 647 (ER), 2015 WL 1473430, at *15-16 (S.D.N.Y. Mar. 31, 2015). Although the District Court acknowledged that "legal futility is not mentioned in Rule 24," it reasoned that futility was nonetheless "a proper basis for denying a motion to intervene." Id. at *15 (citing In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., Nos. 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 WL 2594819, at *5 (S.D.N.Y. June 26, 2008)). Relying on our decision in U.S. Olympic Committee v. Intelicense Corporation., S.A., 737 F.2d 263 (2d Cir. 1984), the District Court concluded that Laroe lacked standing to assert a takings claim because it was not "the owner of an interest in property at the time of the alleged taking." Sherman, 2015 WL 1473430, at *15 (quoting U.S. Olympic Comm., 737 F.2d at 268).

Having concluded that Laroe lacked standing, the District Court did not discuss at length whether Laroe otherwise satisfied the requirements of Rule 24, other than to suggest in a footnote that "it [was] not clear that [Laroe]

6

satisfie[d] Rule 24's timeliness requirement," since Laroe waited to file its motion until after this Court reversed the District Court's decision dismissing Sherman's takings claim.  Id. at *16 n.20.  But because the District Court concluded Laroe lacked standing, it declined to determine whether the motion was timely.  Id.

This appeal followed.

**DISCUSSION**

1. Article III Standing

Laroe filed a motion for intervention as a matter of right under Rule 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b).  We review a district court's denial of a motion to intervene for abuse of discretion.  Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014).  A district court abuses its discretion when "its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding."  MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 385 (2d Cir. 2006).  Here, the District Court denied the motion as futile because, it held, a party seeking to intervene as of right must independently have standing, and Laroe, it concluded, separately lacked standing to assert a

7

takings claim against the Town. See Sherman, 2015 WL 1473430, at *16.

Although, as the District Court acknowledged, "legal futility is not mentioned in Rule 24," id. at *15, we have affirmed denials of a motion to intervene on that basis, United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 856 (2d Cir. 1998) (affirming the denial of a newspaper's motion to intervene to ask the district court to vacate a consent order sealing draft settlement documents). But we have not held that a party seeking to intervene as of right must independently have standing.

In fact, we suggested somewhat to the contrary in United States Postal Service v. Brennan, where a union of postal service employees sought to intervene in a dispute between the U.S. Postal Service and the owners of a small mail-delivery business in Rochester. 579 F.2d 188, 190 (2d Cir. 1978). The district court denied the union's motion partly because the union lacked standing. Although we ultimately affirmed that decision on other grounds, id. at 191, we explained that the motion should not have been denied for lack of standing, because "[t]he question of standing in the federal courts is to be considered in the framework of Article III[,] which restricts judicial power to 'cases' and 'controversies,'" id. at 190 (quotation marks omitted). Therefore,

we reasoned, "there [is] no need to impose the standing requirement upon [a] proposed intervenor" where "[t]he existence of a case or controversy [has] been established" in the underlying litigation.  Id.  Our approach accords with that of the majority (but not all) of our sister circuits that have addressed this issue.[1]  See, e.g., King v. Governor of the State of New Jersey, 767 F.3d 216, 245-46 (3d Cir. 2014); Perry v. Schwarzenegger, 630 F.3d 898, 905-06 (9th Cir. 2011); City of Herriman v. Bell, 590 F.3d 1176, 1183–1184 (10th Cir. 2010); Dillard v. Chilton Cty. Comm'n, 495 F.3d 1324, 1336-37 & n.10 (11th Cir. 2007); United States v. Tennessee, 260 F.3d 587, 595 (6th Cir. 2001); Ruiz v.

---

[1] Some commentary mistakenly suggests that the Second Circuit is one of the minority of jurisdictions that require intervenors to demonstrate that they independently have standing, relying on our decision in In re Holocaust Victim Assets Litigation, 225 F.3d 191 (2d Cir. 2000), cited in 6 Moore's Federal Practice § 24.03.  In that case, we dismissed the appeal of an intervening nonprofit organization because it lacked standing.  Id. at 196-97.  But we based that decision on the prudential (rather than constitutional) ground that it failed to show that it had "organizational standing."  Id. at 195-97; see also Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).  Although we acknowledged that six of the nonprofit's members ostensibly had standing to sue in their own right, we ultimately affirmed the District Court's denial of their motion to intervene because they did not otherwise satisfy the requirements of Rule 24.  Holocaust Victim Assets Litig., 225 F.3d at 197-202.  Holocaust Victim Assets Litigation therefore does not abrogate our position in Brennan that a proposed intervenor need not independently have standing.

*Estelle*, 161 F.3d 814, 829-30 (5th Cir. 1998). But see, e.g., *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 984-85 (7th Cir. 2011) (treating Article III standing as an additional requirement for intervenors); *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833-34 & n.2 (8th Cir. 2009) (same); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1145–46 (D.C. Cir. 2009) (same).

Although a circuit split on this issue has persisted for some time, the Supreme Court has expressly declined to resolve it. See *Diamond v. Charles*, 476 U.S. 54, 68-69 (1986). Instead, in *Diamond v. Charles*, it ruled only that when the original party in the litigation on whose side intervention occurred refuses to appeal and an intervenor wishes to appeal on its own, the intervenor must show that it satisfies Article III's standing requirement in the absence of the original party. *Id.* at 68. But since *Diamond*, the Supreme Court has certainly suggested—although without deciding—that an intervenor need not independently have standing where the original party has standing. In *McConnell v. Federal Election Commission*, for example, the Court determined that it "need not address the standing of the intervenor-defendants" because it was "clear . . . that the [named defendant,] . . . whose

position . . . [was] identical to the [intervenor-defendants',]" had standing.

540 U.S. 93, 233 (2003), overruled on other grounds by Citizens United v. Fed.

Election Comm'n, 558 U.S. 310 (2010). So it is fair to say that while the

Supreme Court has not explicitly endorsed our approach, it has sub silentio

permitted parties to intervene in cases that satisfy the "case or controversy"

requirement without determining whether those parties independently have

standing. The District Court therefore erred by denying Laroe's motion to

intervene based on its failure to show it had Article III standing.

2. Failure to State a Claim

The Town argues in the alternative that we should affirm the District

Court's order because Laroe's motion also fails to state a claim against the

Town—whether or not Laroe has standing. Oral Arg. Tr. 27. That argument,

however, is foreclosed by Trbovich v. United Mine Workers of America, 404

U.S. 528 (1972). In that case, a union member sought to intervene in a suit by

the Secretary of Labor seeking to set aside the results of a union election. Id.

at 529-30. Although, under the relevant statute, only the Secretary was

authorized to bring such a claim, the union member was permitted to

participate on the Secretary's side of the case, as long as he did not assert any

11

new grounds for relief.  Id. at 537, 539.  Thus, under Trbovich, a party need not have a stand-alone claim of its own to intervene on the plaintiff's side of a case – at least as long as it asserts the same legal theories and seeks the same relief as the existing plaintiff.

That principle applies here.  Although it is unclear from the record whether Laroe believes the Town is directly liable to Sherman or Laroe for the alleged taking, Laroe has acknowledged that its damages are essentially the same as Sherman's.  Oral Arg. Tr. 16.  And the Town does not dispute that the land that Laroe now claims it owns is part of the same parcel of land at issue in Sherman's takings litigation.  Even if Laroe has no independent claim that could survive a motion to dismiss under Rule 12(b)(6) – an issue we need not decide – that does not bar it from continuing to participate in the litigation of Sherman's takings claim, so long as it seeks relief that does not differ substantially from that sought by Sherman. Because neither a proposed intervenor's lack of Article III standing nor its failure to state an independent claim necessarily renders a motion to intervene futile, the District Court should have instead focused its analysis on the requirements of Rule 24, to which we now turn.

12

### 3. Rule 24

Laroe filed a motion for both intervention as a matter of right and permissive intervention. Convincing us to reverse the denial of a motion for permissive intervention is notoriously difficult. See United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994). Here, though, we need not address Laroe's motion for permissive intervention because Laroe relies on the same "reasons supporting [its] request to intervene as [of] right." Appellant's Br. 34. We therefore focus on only Laroe's motion to intervene as of right.

The district court must grant an applicant's motion to intervene under Rule 24(a)(2) if "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." MasterCard, 471 F.3d at 389; see also Fed. R. Civ. P. 24(a)(2). The Town of Chester argues that Laroe fails this test because its application was untimely, it lacks a separate interest in the proceeding, and any interest it has in the litigation is adequately represented by Sherman's

13

estate.  Because the factual record before us is insufficiently developed at this stage to allow us confidently to resolve these arguments, we vacate the order and remand to the District Court to determine in the first instance if Laroe satisfies the requirements of Rule 24.

A. <u>Timeliness</u>

In determining whether a motion to intervene is timely, courts consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."  <u>Pitney Bowes</u>, 25 F.3d at 70.

The Town contends that Laroe waited too long to file its motion to intervene.  Laroe responds that it first learned of this litigation after the Town filed its motion to dismiss in May 2012.  Although Laroe waited until May 2014 to inform the District Court that it wished to intervene, it explains that it could not have filed its motion earlier because the District Court had by then dismissed Sherman's suit and it could have intervened only after we decided Sherman's appeal in 2014.

Laroe's explanation fails to answer why it did not try to intervene before the District Court first dismissed Sherman's takings claim. But even assuming that Laroe could have moved to intervene sooner, the litigation is still at an early stage. After we remanded the case, the Town filed a motion to dismiss several other claims from Sherman's complaint that we did not address in our previous opinion. A motion for reconsideration is now pending before the District Court. So despite eight years having passed since Sherman first filed suit in federal court (and more than sixteen years since Sherman first applied for subdivision approval), the parties have not even begun discovery. Although we recognize that "the point to which the suit has progressed" is only "one factor in the determination of timeliness," NAACP v. New York, 413 U.S. 345, 365-66 (1973), this case does not represent an attempt by an intervenor to join a lawsuit at the eleventh hour.

Nor are we persuaded that Laroe's delay in filing the motion prejudiced the Town. The Town points to two ways in which it may have suffered prejudice. First, it asserts, Laroe's intervention would create "[t]he possibility of . . . a much more difficult settlement position." Oral Arg. Tr. 29. Second, it claims that because Laroe's contract with Sherman was essentially

only a mortgage agreement, other creditors may attempt to join the litigation if Laroe is permitted to intervene.[2] While both arguments may explain how the Town is prejudiced by Laroe's <u>participation</u> in the litigation, neither shows how it would be prejudiced by Laroe's <u>delay</u> in filing its motion to intervene—our only concern on timeliness under Rule 24. Indeed, at oral argument the Town wisely conceded that timeliness was not "necessarily where the prejudice would come in[,] in this case." Oral Arg. Tr. 30.

Laroe, on the other hand, claims it would be prejudiced by the denial of its motion to intervene. It invested a significant sum of money into the project and lost that investment allegedly due to the Town's onerous regulatory process. Sherman's estate does not oppose Laroe's intervention. But Laroe informed the District Court that Sherman's widow, the executrix of his estate, was unwilling to pursue the takings claim unless Laroe gave her an

---

[2] The latter argument assumes that Sherman's other creditors are similarly situated to Laroe—in other words, that they agreed to purchase property from Sherman, prepaid a substantial sum of money, and signed a second agreement with Sherman that deemed the purchase price paid in full. There is nothing in the record before us to suggest that any other creditor is in the same situation as Laroe, let alone so many creditors that Laroe's intervention would open "the floodgates" as the Town fears. Oral Arg. Tr. 22.

16

"incentive to move the case forward." Laroe's Letter to the District Court, May 28, 2014, ECF No. 16. And on appeal Laroe represents that Sherman's estate is "without funds" and therefore unable or unwilling to pursue the claim. Oral Arg. Tr. 10. Sherman's death, the alleged refusal of his impecunious estate to pursue the takings claim, and the subsequent sale of the foreclosed property might well prejudice Laroe and in any event constitute "unusual circumstances militating for . . . a finding of timeliness." MasterCard, 471 F.3d at 390. The District Court did not address this issue, and on remand it should have the opportunity to do so.

### B. An Interest Relating to the Property

Rule 24 next requires the movant to "assert[] an interest relating to the property or transaction that is the subject of the action." Id. at 389. That interest must be "direct, substantial, and legally protectable." Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990). And when the underlying dispute involves a takings claim, the movant must show that the interest existed at the time the alleged taking occurred.

The parties dispute whether Laroe is an "equitable owner" of the property referenced in the 2003 Agreement under New York law. Each side

17

marshals what appear to be non-frivolous arguments in its favor.[3] <u>See</u> Appellant's Br. 11-13, 22-24 (citing, <u>e.g.,</u> <u>Matter of City of New York</u>, 306 N.Y. 278, 282 (1954); <u>Bean v. Walker</u>, 464 N.Y.S.2d 895, 897 (4th Dep't 1983) ("[N]otwithstanding the words of the contract and implications which may arise therefrom, the law of property declares that, upon the execution of a contract for sale of land, the vendee acquires equitable title.")); Appellee's Br.

---

[3] Although the Town characterizes the 2003 Agreement as only a "mortgage agreement," Appellee's Br. 17, it appears on its face to be an agreement for the purchase of property. For example, it refers to Sherman as the "Seller" and Laroe as the "Purchaser," and it states that "Seller agrees to sell and convey to Purchaser" certain lots from the proposed subdivision. It is true that Sherman provided a mortgage as security for the $2.5 million Laroe paid him, but structuring the transaction in that way does not necessarily convert the purchase agreement into a loan. At the end of the day, Laroe did not want to be paid <u>back</u>—it wanted the property.

In 2013 Sherman and Laroe agreed that the more than $2.5 million Laroe had already paid Sherman would constitute the purchase price for the property, along with any money Laroe paid to settle Sherman's debts under the TD Bank mortgages. The Town asserts that this additional requirement demonstrates that Laroe did not have a vested interest in the property: it never settled the TD Bank mortgages, so it never held an interest in the land. We disagree. The 2013 Agreement vested Laroe with "the sole discretion" to settle the TD Bank mortgages. Joint App'x at 234. So long as Laroe transferred the required number of lots back to Sherman after the Town approved the subdivision, the 2013 amendment deemed the purchase price "paid in full." <u>Id.</u>

23-25 (citing Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 58 (2d Cir. 1985) ("[T]o have a 'property' interest entitled to Fourteenth Amendment procedural protection[,] a person . . . must have more than a unilateral expectation of it.") (quotation marks omitted)).  The record certainly suggests that Sherman intended to sell at least a portion of the proposed development to Laroe.  But the Town responds that even if Laroe was the equitable owner, it lacked a "vested property interest" at the time of the alleged taking.  Appellee's Br. 24-25.  Indeed, one way of thinking about the Town's misguided argument about standing is that it is essentially a challenge to the "interest" requirement of Rule 24(a)(2).[4]  But trying to identify the precise nature of Laroe's interest in the property is difficult at this stage of the litigation, when the factual record has not been fully developed.  For example, the 2003 Agreement provided for the sale of certain lots within the proposed MareBrook subdivision, but Laroe now claims to be the owner of the entire property.  Nor can we conclude, based on the record before us, that Laroe had

[4] In particular, both parties frame this appeal as raising a question of standing premised on New York law: whether the "equitable owner" of real property has standing to assert a regulatory takings claim against the town in which the property is located.

19

an interest in the property <u>when</u> the alleged taking occurred because, as Laroe acknowledged at oral argument, the District Court has yet to determine when the Town's conduct allegedly became so onerous that it rose to the level of a taking.

None of these uncertainties mean that the Rule 24 motion should have been denied. "Rule 24(a)(2) requires not a property interest but, rather, 'an interest <u>relating</u> to the property or transaction which is the subject of the action.'" <u>Brennan v. N.Y.C. Bd. of Educ.</u>, 260 F.3d 123, 130 (2d Cir. 2001) (emphasis added). "An interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems the claim to be legally or factually weak." <u>Id.</u> Here, Laroe's position appears sufficiently tied to Sherman's that the District Court should have considered whether it satisfied the requirements of Rule 24. To be clear, we do not mean to definitively state whether, under New York law, Laroe has a vested interest in the property that would permit it to bring a takings claim against the Town in a separate action. That is not what Rule 24 requires. Instead it asks only whether the proposed intervenor has an "interest in the proceeding" that is "direct, substantial, and legally protectable." <u>Wash. Elec. Coop.</u>, 922 F.2d at

97. An interest fails to meet the first two requirements (which are not genuinely disputed by the parties) if it is "remote from the subject matter of the proceeding, or . . . contingent upon the occurrence of a sequence of events." Id. In Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co., for example, we held that a state regulatory agency's interest in litigation between two electric companies was not sufficient because it was "based upon a double contingency." Id. The regulatory agency hoped to collect on behalf of ratepayers a portion of any judgment the plaintiff electric company obtained from the defendant. Id. at 95. But in order for the agency to succeed, the plaintiff was first required to win a judgment against the defendant, and then the agency would have had to convince the Vermont Public Service Board, a nonparty to the dispute, to decide that the ratepayers were entitled to a percentage of the plaintiff's recovery. Id. at 97. "Such an interest," we explained, "cannot be described as direct or substantial." Id.

As to the third requirement that the interest be legally protectable, Laroe appears to have paid in full for the property, and it could have closed on the sale were it not for the alleged regulatory taking at issue in the

21

underlying dispute. Were the District Court to conclude that the Town did in fact commit a regulatory taking, it seems to us that it could potentially provide relief that benefits Laroe. Thus, whether or not Laroe actually holds a form of title to the property, it has made at least a colorable claim at this stage in the litigation that it has an interest relating to the property that is "legally protectable." Id. Of course, additional facts may shed light on the precise nature of this interest. We therefore find it prudent to remand for the District Court to determine in the first instance whether Laroe satisfies the interest requirement of Rule 24, separate and apart from the question of whether it would have standing in its own right. In so doing, it would be important, in our view, for the District Court to express its judgment on whether under New York law Laroe has a "direct, substantial, and legally protectable" interest relating to the property. Id.

### C. Remaining Requirements

Rule 24(a)(2) also requires the movant to show that it "is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest," and that its "interest is not adequately represented by the other parties." MasterCard, 471 F.3d at

22

389. As we have observed, Laroe's ability to protect its interest appears likely to be impaired by a judgment on Sherman's takings claim, since Laroe purports to be the equitable owner of that property. But again, the underdeveloped factual record on appeal makes it difficult for us to determine whether Sherman will adequately represent Laroe's interest—a question the District Court did not address at all. "[T]he burden to demonstrate inadequacy of representation is generally speaking 'minimal,'" Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001) (quoting Trbovich, 404 U.S. at 538 n.10), and Laroe has represented that Sherman's estate is "without funds" and thus unwilling or unable to pursue the takings claim, Oral Arg. Tr. 10. Still, this assertion conflicts with the estate's continued effort to oppose the Town's second motion to dismiss, which was filed after we remanded Sherman's takings claim back to the District Court. Laroe also admitted that Sherman's estate shared a unity of interest with Laroe with respect to the Town's liability for the alleged taking, though Laroe argued that they may disagree about litigation strategy and on the issue of damages were they to prevail. Oral Arg. Tr. 11. We leave it to the District Court to determine whether, among other things, ending the

23

litigation one way or the other would impair Laroe's ability to protect its interests, and whether Sherman's estate adequately represents those interests.

**CONCLUSION**

For the foregoing reasons, we vacate the District Court's order of March 31, 2015, insofar as it denied Laroe's motion to intervene, and we remand for further proceedings consistent with this opinion.