699 F.2d 943
 Fed. Sec. L. Rep. P 99,083
SECURITIES AND EXCHANGE COMMISSION, Appellee,
v.
FLIGHT TRANSPORTATION CORPORATION, FTC Executive Air
Charter, Inc., FTC Cayman, Ltd., and William
Rubin, Appellees,
Greyhound Leasing & Financial Corporation, Appellant.
SECURITIES AND EXCHANGE COMMISSION
v.
FLIGHT TRANSPORTATION CORPORATION, FTC Executive Air
Charter, Inc., FTC Cayman, Ltd., and William
Rubin, Appellees,
Joyce Rubin, Appellant.
 Nos. 82-1964, 82-1976.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1982.
Decided Feb. 2, 1983.
 
 Robins, Zelle, Larson & Kaplan, Howard A. Patrick, Robert M. Wattson, Carol L. Thacher, Faegre & Benson, Duane W. Krohnke, Minneapolis, Minn., for appellant Joyce Rubin.
 Gray, Plant, Mooty, Mooty & Bennett, Edward J. Callahan, Jr., Thomas Darling, John L. Krenn, Minneapolis, Minn., for Greyhound Leasing & Financial Corp.
 Meshbesher, Singer & Spence, Ltd., Gerald M. Singer, Daniel J. Boivin, Minneapolis, Minn., for appellee William Rubin.
 Jack L. Chestnut, Chestnut & Brooks, P.A., Minneapolis, Minn., Daniel Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, John A. Cochrane, Cochrane & Bresnahan, St. Paul, Minn., Lowell E. Sachnoff, Charles R. Watkins, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., Thomas P. Gallagher, Minneapolis, Minn., for class plaintiffs.
 Jacob H. Stillman, Associate Gen. Counsel, Richard A. Kirby, Senior Sp. Counsel, Sarah A. Miller, Elliot M. Pinta, Attys., S.E.C., Washington, D.C., for appellee S.E.C.; Paul Gonson, Sol., Washington, D.C., of counsel.
 O'Connor & Hannan, Kevin M. Busch, Thomas C. Bartsh, Minneapolis, Minn., for appellee Flight Transp. Corp.
 Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and DUMBAULD,* District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 Greyhound Leasing & Financial Corporation (Greyhound) and Joyce Rubin appeal from the District Court's denial of their motions to intervene as of right in an SEC enforcement action. We reverse.
 
 I.
 
 2
 Flight Transportation Corporation (FTC), a Minnesota corporation, acts as a holding company for its two subsidiary corporations, FTC Executive Air Charter, Inc., and FTC Cayman, Ltd., which provide aircraft-charter and other general-aviation services. For several years, William Rubin has been President, Chairman of the Board of Directors, and chief executive officer of these corporations.
 
 
 3
 The Securities and Exchange Commission commenced this action against FTC, its subsidiaries, and Rubin on June 18, 1982, alleging that the defendants had violated and aided and abetted violations of antifraud, reporting, and recordkeeping provisions of the federal securities laws.[1] The Commission sought an injunction prohibiting further violations by the defendants of these provisions. It also sought appointment of a receiver to take possession of and marshal the assets of FTC and its subsidiaries, an accounting of all proceeds of FTC's allegedly fraudulent securities offerings, and an order of disgorgement[2] of all funds received by FTC as a result of those sales of securities. With respect to defendant Rubin, the Commission sought a temporary freeze of his personal assets other than funds deemed necessary by the court for subsistence, an accounting by Rubin of all funds received from FTC and its subsidiaries, and disgorgement of such funds.
 
 
 4
 The District Court entered a temporary restraining order enjoining the defendants from committing further violations of the securities laws and from disposing of any assets.[3] Next, the court appointed a receiver to take control of FTC and its subsidiaries and stayed, until further order, all court actions regarding the proceeds of FTC's public offerings of securities. These proceeds, which comprised substantially all of FTC's assets,[4] included approximately $22 million, raised from two public offerings in June 1982.
 
 
 5
 Shortly thereafter, on June 23, 1982, two underwriters,[5] on their own behalf and on behalf of all persons who purchased FTC's securities in the June 1982 offerings, commenced a class action seeking, among other things, imposition of a constructive trust on the $22 million in proceeds. Next, on June 29, 1982, several creditors[6] of FTC filed an involuntary bankruptcy petition against FTC in the Bankruptcy Court for the District of Minnesota. Apparently in response to that bankruptcy filing, the District Court, on July 2, 1982, amended its stay order specifically to stay all bankruptcy proceedings against FTC or Rubin and all proceedings in any state or federal court against Rubin, FTC, and its subsidiaries. After the stay order was entered, Greyhound[7] and Joyce Rubin,[8] the appellants, moved to intervene as of right in the SEC action.
 
 
 6
 Greyhound had leased two airplanes to FTC for a term of ten years at a monthly rental of approximately $75,000. The receiver took possession of both planes but did not pay the rent for June, July, and August 1982 or the required state registration fee on one of the planes.[9] In denying Greyhound's motion to intervene, the District Court said that Greyhound could file a complaint in a federal court against FTC on the debt, separate from the SEC action. Apparently, though, nothing could be done beyond the filing of a complaint. The court continued,
 
 
 7
 But I have not said that you can foreclose on collateral or anything like that; however, file your case and get in here, and you can be in the same boat as these other people, and you can join in these deliberations.
 
 
 8
 I am going to deny your motion to intervene.
 
 
 9
 Joint Appendix (Jt.App.) at 382.
 
 
 10
 On August 16, 1982, the court entered a written order denying Greyhound's motion to intervene:
 
 
 11
 This Court finds that petitioner's motion to intervene is premature, as it does not allege a present, direct interest but rather a possible interest which may hypothetically be injured if particular events do not occur. Further, petitioner has failed to meet the requirements of Rule 24(a)(2) of the Federal Rules of Civil Procedure in that it has not shown that its interests will be adversely affected by the outcome of the proceedings herein as the stay order entered by this Court and the appointment of a Receiver serve to adequately protect the petitioner's interest.
 
 Jt.App. at 141.[10]
 
 12
 The other appellant, Joyce Rubin, after she filed an action for divorce in a state court against William Rubin, moved to intervene in the SEC action and for a modification of the stay order so that her divorce action could proceed. In denying the motion to intervene, the court held:
 
 
 13
 that the requirements of Rule 24(a)(2) have not been met insofar as petitioner Rubin has been unable to show that the disposition of the instant matter will, as a practical matter, impair or impede her ability to protect her interest.... Furthermore, this motion is denied as there is no intervention as a matter of right in Securities and Exchange Commission actions. Securities and Exchange Commission v. Everest Management Corp., 475 F.2d 1236 (2d Cir.1972); Securities and Exchange Commission v. Canadian Javelin Ltd., 58 F.R.D. 182 (S.D.N.Y.1973). And as intervention would unnecessarily complicate the issues in this action, it is denied. Parklane Hosiery Co. Inc. v. Shore, 439 U.S. 322 [99 S.Ct. 645, 58 L.Ed.2d 552] (1979).
 
 
 14
 Jt.App. at 140. The court explained the extent of its ruling at the hearing on the motion, saying, "We won't pay any money over until she is heard, one way or another. However, I am not going to let her intervene now." Jt.App. at 329. With regard to her request that the divorce action be allowed to proceed, the court modified its stay order so that the Rubins' marriage could be dissolved. However, no property interests were to be adjudicated in the state courts:
 
 
 15
 [G]et the divorce, talk about child custody, talk about what he may or may not owe her; however, in the context of what his assets are in this company, I am not going to allow any adjudication of that. We will make that decision--what his assets are and what her assets are--that will be done in this court.
 
 
 16
 Jt.App. at 325-26. Thus, the court ordered that "[a]ll aspects of the marriage dissolution relating to property settlement ... be held in abeyance pending the outcome of the above-named [SEC] action." Jt.App. at 140.
 
 
 17
 Because we believe that both appellants were entitled to intervene, we reverse.
 
 II.
 
 18
 Under Rule 24(a)(2) an applicant for intervention as of right must show (1) that he "claims an interest relating to the property or transaction which is the subject of the action," (2) that "he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," and (3) that his "interest is [not] adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2).[11] Our reasons for concluding that these requirements have been satisfied will be set out for each appellant in turn.
 
 A.
 
 19
 The appellees argue that Greyhound has no interest in the question of the defendants' liability for violation of the federal securities laws. This argument fails to recognize, however, that if its claims are to be satisfied, Greyhound must as a practical matter look to the $22 million presently in the hands of the receiver, which is virtually the only property FTC now has and which the SEC seeks to have "disgorged."
 
 
 20
 Likewise, the appellees argue that Greyhound's unliquidated creditor's claim against FTC is insufficient to support intervention. When the District Court denied intervention, however, Greyhound had a specific property interest: a reversionary interest, as lessor, in the airplanes, which were then in the receiver's possession. Then, with the District Court's approval, the receiver returned the planes to Greyhound, and Greyhound now has only an unliquidated claim for damages for breach of the lease. Even though a creditor with an unliquidated claim cannot generally intervene in an action brought by another creditor, but must bring his own, individual action, we believe that Greyhound should have been allowed to intervene. First, the District Court did more than deny Greyhound's motion to intervene; it prohibited Greyhound from prosecuting any other action. Second, it is unrealistic to say that Greyhound can bring another action, because, as a practical matter, FTC has no assets other than the $22 million the SEC seeks to have disgorged.
 
 
 21
 Finally, we disagree with the District Court's conclusion that Greyhound should be denied intervention because it did "not allege a present, direct interest but rather a possible interest which may hypothetically be injured if particular events do not occur." Jt.App. at 141. Although the intervenor cannot rely upon an interest which is wholly remote and speculative, intervention as of right may be based upon an interest which is contingent upon the outcome of the litigation. In Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861 (8th Cir.1977), for example, a group of homeowners was allowed to intervene in an action involving the constitutionality of a municipal ordinance which placed a temporary moratorium on the operation of abortion clinics. The potential loss in the market value of the intervenors' homes constituted a sufficient "interest" under Rule 24(a)(2) even though three events would have had to take place before the homeowners experienced any actual loss: (1) the city had to lose the court fight on the constitutionality of the ordinance, (2) the abortion clinic had to open, and (3) the clinic's operation had to lead to a reduction in the homeowners' property values. Here, if the District Court orders FTC's frozen assets "disgorged" to defrauded investors, Greyhound will be unable to obtain satisfaction of its claim. Greyhound has a sufficiently direct interest to support intervention.
 
 
 22
 Greyhound's ability to protect its interest will be impaired unless it is allowed to intervene. The appellees argue that the possibility that a potential judgment may be more difficult to collect is not sufficient "impairment" to support intervention as of right, and that Greyhound's interests can be protected in the bankruptcy proceeding. This argument fails to recognize, however, that because virtually all FTC's assets are in the hands of the receiver and may be subject to an order of "disgorgement" or constructive trust by the District Court, Greyhound's interests may be foreclosed by the action of the District Court, whatever may occur in bankruptcy.[12]
 
 
 23
 Finally, Greyhound has met the "minimal" burden of showing that its interests may not be adequately represented by existing parties. See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). The SEC's primary goal is to protect the public by preventing further securities violations. The receiver is concerned with marshaling and protecting FTC's assets for the benefit of all concerned parties. While Greyhound's interests may not be adverse to those of the SEC or the receiver, they are sufficiently "disparate" to warrant intervention. See Planned Parenthood of Minnesota, Inc., supra, 558 F.2d at 870.
 
 B.
 
 24
 The appellees[13] argue that Joyce Rubin's interest in William Rubin's property is inchoate and, therefore, insufficient to support intervention. We disagree. Under Minn.Stat.Ann. Sec. 518.54, Subd. 5, 1982 Minn.Sess.Law Serv. 368, 369 (West),
 
 
 25
 Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree in a proceeding for dissolution or annulment. The extent of the vested interest shall be determined and made final by the court pursuant to section 518.58.
 
 
 26
 By enacting this provision, the Minnesota legislature intended to confirmthat the division or disposition of marital property ... incident to a [divorce] ... is a division of a common ownership by spouses in property for the purposes of the property laws of this state and for the purposes of United States and Minnesota income tax laws.[14]
 
 
 27
 Chapter 464, Sec. 3, 1982 Minn.Sess.Law Serv. 370 (West). Marital property is, essentially, property acquired by either party during the marriage. Minn.Stat.Ann. Sec. 518.54, Subd. 5, 1982 Minn.Sess.Law Serv. 368 (West). Neither William Rubin nor the SEC suggests that Rubin's assets are not marital property. Thus, Joyce Rubin is virtually certain to become entitled to some of those assets upon division of the property, because of the conclusive presumption "that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife." Minn.Stat.Ann. Sec. 518.58, 1982 Minn.Sess.Law Serv. 370 (West). It is irrelevant that the precise moment of "vesting" is undetermined. Keeping in mind that "[t]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694, 700 (1967), we are satisfied that Joyce Rubin "has asserted a 'significantly protectable interest' in the primary litigation," Corby Recreation, Inc. v. General Electric Co., 581 F.2d 175, 177 (8th Cir.1978) (per curiam) (quoting Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971)).
 
 
 28
 Joyce Rubin may be unable, as a practical matter, to protect her interests if she cannot intervene. Even if the District Court allowed her to participate in all hearings and did not decide any substantive questions concerning the property without allowing her to be heard, she would not have the full protection afforded a party to the proceedings. For example, she would have no right to participate in discovery proceedings, to participate in settlement negotiations among William Rubin, the SEC, and the creditors, or to appeal subsequent orders or judgments.
 
 
 29
 Finally, the existing parties cannot be expected to represent Joyce Rubin's interests adequately. The appellees argue that William Rubin and Joyce Rubin have an identical interest in the outcome of the litigation: to resist the SEC's disgorgement claim. We do not believe, however, that this is determinative. Joyce Rubin has filed for divorce. Bitter feelings may be expected to result. Under these circumstances, we believe that basic fairness demands that Joyce Rubin be allowed to intervene in order to protect her own interests in the marital property. Cf. Hartford Accident & Indemnity Co. v. Crider, 58 F.R.D. 15 (N.D.Ill.1973). Even though she and William have, on paper, the same financial interest, she should not have to depend on representation by a person with whom her personal relationship has apparently been irretrievably broken.
 
 III.
 
 30
 We respectfully disagree with the District Court's statement that "[T]here is no intervention as a matter of right in Securities and Exchange Commission claims," Jt.App. at 140. In SEC v. Everest Management Corp., 475 F.2d 1236 (2d Cir.1972), cited by the District Court as authority for its ruling, the Second Circuit affirmed the denial of an application by victims of securities fraud to intervene in an SEC injunctive action. The question of intervention as of right was not properly before the Court of Appeals, because the claim had been withdrawn in the trial court before it decided the intervention motion. Nonetheless, the Court of Appeals said that intervention as a matter of right would not have been available, because the appellants were not " 'so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest.' " Id. at 1239. The Court went on to hold that the District Court had properly denied permissive intervention. Far from implying that there could never be intervention as a matter of right in SEC actions, the Court indicated that in other, albeit "unusual," circumstances, intervention might be appropriate. Id. at 1240.[15]
 
 
 31
 Similarly, we do not believe that the Supreme Court's opinion in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), supports the District Court's statement. In Parklane Hosiery Co. a plaintiff in a stockholder's class action claimed that the defendant was collaterally estopped to relitigate the issues of securities fraud decided against it in an SEC injunctive action. The Supreme Court approved the offensive use of collateral estoppel in this case, in part because
 
 
 32
 The application of offensive collateral estoppel will not here reward a private plaintiff who could have joined in the previous action, since the respondent probably could not have joined in the injunctive action brought by the SEC even had he so desired.[17]
 
 
 33
 Id. at 331-32, 99 S.Ct. at 651-52. Footnote 17 reads:
 
 
 
 [17]
 SEC v. Everest Management Corp., 475 F.2d 1236, 1240 (CA2) ("[T]he complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues"). Moreover, consolidation of a private action with one brought by the SEC without its consent is prohibited by statute. 15 U.S.C. Sec. 78u(g).
 
 
 
 34
 439 U.S. at 332 n. 17, 99 S.Ct. at 652 n. 17.
 
 
 35
 This passage does not say that there can never be intervention in an SEC action; it merely indicates that on the facts of Parklane Hosiery Co., intervention would probably have been denied. As for the reference to 15 U.S.C. Sec. 78u(g),[16] the purpose of the subsection is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation. It does not say that no one may intervene in an action brought by the SEC without its consent. It does not mention Fed.R.Civ.P. 24, nor does Rule 24 contain any clause giving special privileges to the SEC.
 
 
 36
 Finally, we observe that the Court of Appeals for the District of Columbia Circuit has recently recognized a right to intervene in such actions. In SEC v. Dresser Industries, Inc., 202 U.S.App.D.C. 345, 628 F.2d 1368, 1390 (1980) (en banc), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980), the Court indicated that employees of a corporation under investigation by the SEC might intervene in future SEC proceedings to protect their interest in maintaining the confidentiality of certain documents and to assert an alleged attorney-client privilege.
 
 IV.
 
 37
 Accordingly, the orders of the District Court denying leave to intervene as of right are reversed. No. 82-1976 and that portion of No. 82-1964 dealing with intervention are remanded to the District Court with direction to grant the motions of Joyce Rubin and Greyhound Leasing and Financial Corp. for leave to intervene. All parties in No. 82-1964 are directed, within 15 days of the filing of this opinion, to report to this Court as to what outstanding issues in that appeal remain to be decided, or whether the appeal (apart from the question of intervention, on which we have now ruled) may now be dismissed as moot.
 
 
 38
 It is so ordered.
 
 
 
 *
 The Hon. Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 15 U.S.C. Secs. 77q(a), 78j(b), 78m(a) (1976), 15 U.S.C. Sec. 78m(b)(2) (Supp. V 1981), and 17 C.F.R. Secs. 240.10b-5, .12b-20, .13a-1, .13a-13, .13b2-1
 
 
 [2]
 The SEC has not clearly stated to whom it wishes the "disgorged" money to be paid. In this context, however, "disgorgement" seems to be another word for restitution to defrauded investors. See, e.g., SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir.1978); SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 95-96 (2d Cir.1978). Cf. S. & S. Realty Corp. v. Kleer-Vu Industries, Inc., 575 F.2d 1040, 1044 (2d Cir.1978) (under Sec. 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78p(b) (1976), profits made by insiders on short-swing trading are "disgorged" to the issuer)
 
 
 [3]
 Later, preliminary injunctions were entered against the corporate defendants, and the temporary restraining order against William Rubin was extended indefinitely. The court set a subsistence allowance for William Rubin and, later, for Joyce Rubin
 
 
 [4]
 FTC's financial condition is illuminated by a letter dated November 5, 1982, from the receiver to the District Court, in which the receiver proposed to shut down FTC's business operations and to reduce his own staff and operations in order to save money. This letter casts doubt on the receiver's ability to litigate vigorously, and furnishes an additional reason why the receiver cannot be expected to protect adequately the interests of Greyhound
 
 
 [5]
 Drexel Burnham Lambert Incorporated and Moseley, Hallgarten, Estabrook & Weeden, Inc
 
 
 [6]
 These creditors, Continental Illinois National Bank and Trust Company of Chicago, Fifth Northwestern National Bank of Minneapolis, Duncan Aviation, Inc., Gates Learjet Corporation, and Bell Helicopter Textron, Inc., are appellants in a related appeal, No. 82-1990, which is being held in abeyance. SEC v. Flight Transportation Corp., Nos. 82-1964, 82-1976, and 82-1990 (8th Cir. Dec. 1, 1982) (per curiam). We are entering an order today in No. 82-1990 directing counsel to inform us whether any issues remain to be decided
 
 
 [7]
 In No. 82-1964
 
 
 [8]
 In No. 82-1976
 
 
 [9]
 After this appeal was filed, the receiver obtained District Court approval to transfer possession of the two planes to Greyhound, but Greyhound still claims $3 million in damages arising from its inability in the present market to re-lease the planes at a comparable rate. It also claims approximately $225,000 in unpaid rent
 
 
 [10]
 At the same time it moved to intervene, Greyhound moved to modify the stay imposed by the District Court insofar as it prevented the involuntary bankruptcy action from proceeding. The District Court denied this motion, saying "the bankruptcy and the petitions in bankruptcy will have no effect whatsoever on this case." Jt.App. at 373. Greyhound and the Continental Illinois group have appealed from this order. This Court on December 1, 1982, ordered, pending the appeals, that the bankruptcy action should proceed, and the appeals on this point are being held in abeyance pending the adjudication by the District Court or the Bankruptcy Court of the motion to impose a constructive trust on the proceeds of the June 1982 securities offerings. By order entered today in Nos. 82-1964 and 82-1990, we are attempting to ascertain whether this bankruptcy aspect of the case presents any issue that needs to be decided in the currently pending appeals
 
 
 [11]
 Additionally, the application for intervention must be timely. There is no contention that the applications in the present case were untimely
 
 
 [12]
 Even though we have ordered that the bankruptcy action be allowed to proceed, it is possible that the Bankruptcy Court will be held to have no authority to order disposition of the assets in the hands of the receiver in this action. We have not yet reached that question, and may not need to reach it in these appeals. Nor do we know what actions the District Court and the Bankruptcy Court have taken since the oral argument on November 10, 1982
 
 
 [13]
 The receiver also filed a brief in opposition to Joyce Rubin's motion to intervene
 
 
 [14]
 William Rubin argues that the legislature intended marital property interests to be "vested" only for purposes of federal and state tax laws. Although tax consequences may have motivated the passage of the 1982 statute, the law itself on its face is not so limited
 
 
 [15]
 The District Court also cited "Securities and Exchange Commission v. Canadian Javelin Ltd., 58 F.R.D. 182 (S.D.N.Y.1973)" as authority for its ruling. The case reported at 58 F.R.D. 182 is SEC v. Vesco (S.D.N.Y.1973). SEC v. Canadian Javelin Ltd. is reported at 64 F.R.D. 648 (S.D.N.Y.1974), appeal dismissed, 538 F.2d 313 (2d Cir.1976)
 Neither case convinces us. Vesco purported to rely on Everest Management Corp., supra, to deny intervention to shareholders of defendants in an SEC injunctive action. The court in Vesco, however, did not have access to the opinion in Everest Management Corp., which apparently had not yet been filed. To the extent that the opinion in Vesco may indicate that intervention as of right, as opposed to permissive intervention, in SEC actions may be denied simply because it would complicate and impede prompt disposition of the action, we believe it to be erroneous and its reliance on Everest Management Corp. to be misplaced. In Canadian Javelin Ltd. the court denied intervention as of right in an SEC action on the ground that there was no possible impairment of the applicant's interest. Canadian Javelin Ltd., supra, 64 F.R.D. at 650. The court also cited Everest Management Corp. and Vesco for the proposition that "intervention as of right by victims of alleged securities frauds in an SEC enforcement action is inappropriate." Canadian Javelin Ltd., supra, 64 F.R.D. at 650. If the court meant by this that intervention is always inappropriate, we must disagree, for the reasons set out above.
 
 
 [16]
 15 U.S.C. Sec. 78u(g) provides in pertinent part:
 Notwithstanding the provisions of Sec. 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission.