Gene FISHER, Plaintiff and Appellee,

v.

Sheila FISHER, Defendant,

David Fisher, Suzanne Medley and
Micheal Fisher, Applicants
and Appellants.

Civil No. 950410.

Supreme Court of North Dakota.

April 23, 1996.

Robert A. Ramlo, Dickinson, for plaintiff and appellee.

Randall J. Bakke and Sheldon A. Smith, Smith, Bakke, Hovland & Oppegard, Bismarck, for applicants and appellants.

NEUMANN, Justice.

David Fisher, Suzanne Medley, and Micheal Fisher appeal from a district court order denying their motion to intervene in their parents' divorce action under Rule 24(a), N.D.R.Civ.P. We affirm.

David, Suzanne, and Micheal are adult children of Gene and Sheila Fisher. Gene filed for a divorce from Sheila in June 1994. The major asset of the marriage is ownership of stock in Fisher Industries (Fisher), a close corporation encompassing Fisher Sand & Gravel, General Steel and Supply, and Greenacres Farm. Fisher is a multimillion dollar corporation that employs hundreds of people, primarily in North Dakota. Sheila owns 1,391 shares of Fisher stock and Gene owns 690 shares. David, Suzanne, and Micheal each own seventy-one shares of Fisher, which they received by gift from their parents. Eighty-one shares of Fisher stock are owned by persons not involved in this action.

In August 1995, the district court, on its own motion, ordered Sheila and Gene to "address and argue" whether the court should appoint a receiver to take control of Fisher pending resolution of their divorce action. In September 1995, David, Suzanne, and Micheal filed a motion to intervene in their parents' divorce "for the purpose of opposing the appointment of a receiver" over Fisher. In November 1995, the district court issued an order appointing a receiver over Gene and Sheila's Fisher stock "to protect the one major asset of the marriage" and, in a sepa-rate order, denied the motion to intervene, finding "[t]hat this is a divorce action and the initial appointment of a receiver of the parties stock does not at this time affect the intervenor's stock." David, Suzanne, and Micheal appeal the order denying intervention.

David, Suzanne, and Micheal argue they have a right to intervene in their parents' divorce under Rule 24(a), N.D.R.Civ.P., because they have an interest relating to the subject matter of the action. They argue the appointment of a receiver over their parents' shares in Fisher will adversely affect the value of their shares in the corporation.

Our rules allow intervention of right to protect an interest in the subject of an action. *Fetch v. Quam,* 530 N.W.2d 337, 339 (N.D.1995). Rule 24(a), N.D.R.Civ.P., directs:

"Upon timely application anyone must be permitted to intervene in an action if: ... the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Rule 24(a), N.D.R.Civ.P., is derived from and substantially identical to Rule 24(a), F.R.Civ.P. Rule 24, N.D.R.Civ.P. (Explanatory Note). When our procedural rules are similar to federal procedural rules, federal court interpretations are highly persuasive and we may look to them for guidance in interpreting our rules. *See Farmers Union Oil Co. of Williston v. Harp,* 462 N.W.2d 152, 154 (N.D.1990); *see also Fetch,* 530 N.W.2d at 339–40.

In considering whether a party may intervene of right under Rule 24(a), N.D.R.Civ.P., we review any findings of fact made by the trial court under the clearly erroneous standard of review contained in Rule 52(a), N.D.R.Civ.P. However, the ultimate question of whether a party has a right to intervene in an action is a question of law that is fully reviewable. *See Sierra Club v. Robertson,* 960 F.2d 83, 85 (8th Cir.1992) (de

novo standard appropriate in reviewing denial of motion to intervene as of right); compare *Kiamichi R. Co., Inc. v. National Mediation Bd.*, 986 F.2d 1341, 1345 (10th Cir. 1993) ("Permissive intervention is a matter within the district court's discretion, and we will not reverse the district court's ruling absent a clear abuse of discretion.").

We have required a trial court to allow intervention under Rule 24(a), N.D.R.Civ.P., in a case in which the intervenor claimed an interest in the land that was the subject of the litigation. *Quick v. Fischer*, 417 N.W.2d 843, 845 (N.D.1988). The children here, however, do not claim a direct interest in the property that will ultimately be disposed of in Sheila and Gene's divorce action. Instead, the children argue they have an interest in the divorce action because the court's decision to appoint a receiver for their parents' property may affect the value of their own property.

The children's argument has two components. They first argue the value of their stock will fall due to the appointment of a receiver over their parents' stock because outsiders generally perceive the appointment of a receiver for a corporation as a sign of trouble. They point to concerns expressed by one of Fisher's creditors as evidence that the public sees Fisher as in financial distress now that the court has appointed a receiver. The children also claim appointment of a receiver has had a direct impact on them because it has delayed action on an employee stock ownership plan (ESOP) through which they had hoped to sell their stock in Fisher.

 In *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir.1995), the court explained the interest required to support intervention of right under Rule 24(a), F.R.Civ.P.:

"The applicant for intervention must have an interest in the subject matter of the litigation, i.e., an interest that is 'direct,' as opposed to tangential or collateral. Furthermore, that interest must be 'recognized,' i.e., both 'substantial' and 'legally protectable.'"

A "direct" interest is one that is not "remote" or "contingent." 3B James W. Moore, *Moore's Federal Practice* ¶ 24.07[2] at 24–54 (2d ed. 1995). A "legally protectable" interest is one that "the *substantive* law recognizes as belonging to or being owned by the applicant." *New Orleans Public Service v. United Gas Pipe Line*, 732 F.2d 452, 464 (5th Cir.1984), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984)(emphasis in original). A party who qualifies as a "real party in interest" under Rule 17(a), F.R.Civ. P., is a party with a "legally protectable" interest. *Id.; see also* 6A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1543 at 339 (2d ed. 1990) ("[T]he real party in interest requirement ... must be satisfied for purposes of asserting ... a claim by an intervenor.").

The question before us is whether the children's interest here is a direct, substantial, and legally protectable interest. The children argue their interest is an interest in the value of their property—their stock in Fisher. They argue this interest justifies their intervention in their parents' divorce because the appointment of a receiver has affected the value of their property. The children point to three Eighth Circuit cases to bolster their claim: *Planned Parenthood v. Citizens for Com. Action*, 558 F.2d 861 (8th Cir.1977), *S.E.C. v. Flight Transp. Corp.*, 699 F.2d 943 (8th Cir.1983), and *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994 (8th Cir.1993). They claim these cases support their argument that potential loss in value of property is an interest justifying intervention.

In *Planned Parenthood*, 558 F.2d at 869, homeowners sought intervention in an action to decide the constitutionality of a zoning ordinance restricting the construction of abortion clinics. The court determined the homeowners had an interest justifying intervention because the result of the litigation would "necessarily bear[ ] directly" on their property interests. *Id.*

In *S.E.C.*, 699 F.2d at 948–49, a creditor sought intervention in a Securities and Exchange Commission action against an aircraft company, in which the S.E.C. sought to have the company disgorge all its assets to defrauded investors. The court determined the creditor had an interest justifying interven-

tion because the aircraft company would not have the resources to repay its debt to the creditor if the S.E.C. succeeded. *Id.*

Finally, in *Mille Lacs Band,* 989 F.2d at 997–98, several counties and landowners sought intervention in an action between the Mille Lacs Band of Chippewa and the State of Minnesota aimed at determining the treaty rights of the Band. The court determined the intervenors had an interest justifying intervention because the litigation would determine whether Band members could hunt, fish, and gather on land belonging to the counties and landowners. *Id.* at 998.

These cases may suggest property owners can intervene in legal actions when the action affects their property rights. The link between the property interest and the legal action here, however, is far less clear than in the cases relied on by David, Suzanne, and Micheal. Property owners have direct interests in the zoning ordinances that govern their property; a creditor has a direct interest in whether its debtor will lose all its assets; and counties and landowners have direct interests in who will use their lands. The interest of an adult child in how a court protects the property of a divorcing parent does not seem so clear, especially when the child claims no direct interest in the property protected by the court.

Our review of cases in which third parties have sought intervention in divorce actions likewise does not support the children's claim that they have an interest justifying intervention. Courts consistently require third parties to have a direct interest in the subject matter of the divorce action before allowing intervention. *See, e.g., Davis v. Davis,* 261 Iowa 992, 156 N.W.2d 870 (1968) (intervention by son in parents' divorce permitted because the son claimed an interest in the parents' farmland based on an oral agreement); *Wharff v. Wharff,* 244 Iowa 496, 56

N.W.2d 1 (1952) (intervention by children allowed in case in which children alleged interest in parents' property because they purchased it with funds held in trust for the children); *Elms v. Elms,* 4 Cal.2d 681, 52 P.2d 223 (1935) (intervention allowed in case in which children alleged interest in parents' real property because they contributed to purchase of property). When third parties cannot show a direct interest in the subject matter of a divorce, courts disfavor intervention.[1] *See, e.g., Marks v. Marks,* 609 So.2d 710 (Fla.App.1992) (intervention denied because the child did not have a direct and immediate interest in the divorce: the child was a minority shareholder in a close held corporation and argued the divorce judgment could have an affect on his tax consequences); *Aniballi v. Aniballi,* 255 Mont. 384, 842 P.2d 342 (1992) (intervention in child's divorce by parents denied because they could not show interest in subject property); *Brown v. Truluck,* 239 Ga. 105, 236 S.E.2d 60 (1977) (intervention by adult children denied because children failed to show interest in subject property).

The children here have a direct interest in their own stock. Their stock, however, remains in their hands and their parents' divorce action will not determine its disposition. The children clearly also have an interest in the value of their stock, and it is arguable the appointment of a receiver has affected this interest. The valuation of minority shares in a close corporation, however, is problematic at best. One school of thought insists minority shares in a close corporation have small value. *See Estate of Weber,* 86 Wis.2d 151, 271 N.W.2d 657, 662 (1978) ("Minority shares in a close corporation are frequently of little value because of the lack of effective voice in the policies of the corporation on the part of the minority."). Even in the rare situations in which minority shareholders in a close corporation

---

**1.** In considering whether to allow intervention of right in a divorce under a procedural rule substantially similar to our own, the West Virginia Supreme Court of Appeals determined intervenors must fulfill the requirements of the rule *and* demonstrate "an interest which will outweigh the substantial privacy interests of the divorcing parties." *Boyle v. Boyle,* 194 W.Va. 124, 459 S.E.2d 401, 404 (1995). Under the *Boyle* rule,

courts "must balance the substantial privacy interests of the divorcing parties against considerations relating to the interest asserted by the potential intervenor." *Id.* The court affirmed the trial court's denial of intervention by a third party who claimed a right to purchase stock obtained by one of the divorcing parties through the property settlement. Id., 459 S.E.2d at 405.

are entitled to sell their shares for a "fair value" to the majority, *see* N.D.C.C. § 10–19.1–87, the process of determining this value is a complicated one. *See Brown v. Hedahl's–Q B & R, Inc.*, 185 N.W.2d 249 (N.D. 1971) (court applied asset value, market value, and investment value methods of determining minority share value, and gave appropriate weight to each, in calculating fair value of dissenting shareholders' shares); *see also* Charles W. Murdock, *The Evolution of Effective Remedies for Minority Shareholders and Its Impact Upon Valuation of Minority Shares*, 65 Notre Dame L.Rev. 425, 473 (1990) (hereinafter Murdock) ("[V]aluation is an inexact science.").

Here, the children have submitted affidavits asserting their shares have value and expressing concern this value will be adversely affected by the appointment of a receiver, but the only figures the children provide showing value are based on how much their shares might bring under an ESOP proposal. Evidence in the record, however, shows the ESOP stock purchase amount figures provided by the children are, at best, speculative. The "Letter of Intent to Purchase" submitted by the company proposing the ESOP plan states "[t]he purchase amount will be determined based on the receipt of an acceptable appraisal report." The record contains no such report, nor is there any evidence the potential purchasers have agreed to buy David, Suzanne, and Micheal's stock at a given price. There is no evidence in the record showing the children's minority interest in the corporation has a value that is anything other than speculative.

It is arguable that no ESOP appraisal reports or firm offers have been made because the trial court has prohibited the receiver from considering the ESOP. Indeed, the children argue "[t]he fact that the Trial Court's order prohibits the receiver from exploring or even considering the possibility of the ESOP conclusively establishes that the Trial Court's appointment of a receiver has and will continue to have a detrimental effect on the value of the Applicant's stock." This argument rings hollow considering evidence in the record showing appointment of a receiver did not stop the ESOP plan from going forward. The "Letter of Intent to Purchase" shows the ESOP purchasers sought to buy Sheila's shares in addition to the children's shares. Gene and Sheila have been under court order not to sell "any property" since June 16, 1994, when the court filed the first interim order in this case. The children are under no obligation to refrain from continuing ESOP discussions, but it is obvious any ESOP plan contingent on the purchase of Gene or Sheila's shares cannot be completed until the divorce action is resolved, or at least until Gene and Sheila can agree on such a plan and join in asking the court's approval. The appointment of the receiver has not altered this situation, and therefore provides no justification for intervention by the children.

■ David, Suzanne, and Micheal are minority shareholders in a close corporation. Minority shareholders in close corporations historically have had few rights. *See* Murdock at 425–29. Our Business Corporation Act, chapter 10–19.1, N.D.C.C., however, provides significant protection for minority shareholders in given situations. *See, e.g.,* N.D.C.C. §§ 10–19.1–28 (actions to enjoin ultra vires acts); 10–19.1–86 (actions by shareholders in general); 10–19.1–87 (dissenting shareholders' rights); 10–19.1–88 (asserting dissenters' rights); 10–19.1–115 (involuntary dissolution); 10–19.1–116 (involuntary dissolution procedure). We have recognized that minority shareholders in close corporations have a right to relief when faced with oppressive conduct by the majority. *Balvik v. Sylvester*, 411 N.W.2d 383, 388 (N.D.1987). Depending on the harm suffered, minority shareholders in close corporations may bring derivative or direct actions to obtain relief. *Schumacher v. Schumacher*, 469 N.W.2d 793, 798 (N.D.1991). Under the proper circumstances, David, Suzanne, and Micheal as minority shareholders have many routes to relief under our law: intervention in their parents' divorce is not a necessity.

We conclude David, Suzanne, and Micheal are not entitled to intervention of right in their parents' divorce action because they do not have an adequate interest in the action as required by Rule 24(a)(ii), N.D.R.Civ.P.

The district court's order denying intervention is affirmed.

VANDE WALLE, C.J., NEUMANN and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.