1997 ND 37

STATE of North Dakota ex rel. Heidi HEITKAMP, Attorney General, Plaintiff and Appellee,

v.

FAMILY LIFE SERVICES, INC., dba Family Life Credit Services, and American Family Credit Services; Help and Caring Ministries, Inc.; Darold Larson, individually, and as officer and employee of Family Life Services, Inc., and as officer and employee of Help and Caring Ministries, Inc., and as trustee of Christian Caring Ministry Trust; Patricia Larson, individually and as an officer and employee of Family Life Services, Inc., and Help and Caring Ministries, Inc.; Joseph Larson, individually and as trustee of the Christian Caring Ministry Trust and as officer, employee, or director of Help and Caring Ministries, Inc.; Benjamin Larson, individually and as trustee of the Christian Caring Ministry Trust and as officer, employee, or director of Family Life Services, Inc.; Dennis Uchtman, individually and as officer, employee, and director of Family Life Services, Inc., and Help and Caring Ministries, Inc.; Charlene Uchtman, individually and as an officer and director of Family Life Services, Inc.; Gary Chattin, individually and as an officer and director of Family Life Services, Inc.; Lynn Sahr, individually and as an officer and director of Help and Caring Ministries, Inc.; David Clemens, individually and as an officer and director of Help and Caring Ministries, Inc.; Diamond Card International, Inc.; and National Association of Christian Credit Counselors, Defendants,

and

Martin Wishnatsky, Intervenor and Appellant.

Civil No. 960213.

Supreme Court of North Dakota.

Feb. 27, 1997.

David W. Huey (argued), Assistant Attorney General, Bismarck, for plaintiff and appellee.

Martin Wishnatsky, Fargo, pro se.

SANDSTROM, Justice.

[¶ 1] Martin Wishnatsky appeals from a district court order denying his motion to intervene as a defendant in this action under Rule 24(a), N.D.R.Civ.P. Because Wishnatsky has a cognizable First Amendment right to receive ministry, an interest established by the Attorney General's own words as sufficiently distinct from the defendants', we reverse the trial court's order and direct the trial court to allow intervention.

[¶ 2] Family Life Services, Inc. and Help and Caring Ministries, Inc. are nonprofit corporations with charitable, educational, and religious purposes. Darold Larson operates and controls these corporations. He is also a trustee of the Christian Caring Ministry Trust, a charitable trust owning the house Larson lives in and other property used to transfer funds between various entities and accounts controlled by Larson.

[¶ 3] On January 9, 1996, the Attorney General, acting on behalf of the State, sued FLS, doing business as Family Life Credit Services, Help and Caring Ministries, Darold Larson, and two other corporate and nine individual defendants, alleging Larson, with the assistance of the other individual defendants, defrauded personal judgment creditors and provided himself and others with personal benefits in violation of state law and the bylaws and articles of incorporation of the defendant non-profit corporations. The suit also alleged Larson commingled funds and invaded trust accounts belonging to FLS clients, for his own personal benefit. The State sought dissolution of Family Life Services and Help and Caring Ministries or, in the alternative, replacement of the current officers and directors with an independent board of directors and officers elected by the independent board. On January 25, 1996, the court appointed a receiver to manage and operate Family Life Services and Help and Caring Ministries during the pendency of the lawsuit. The court concluded the appointment of a receiver was appropriate because the defendant corporations:

"... have engaged in a continuing pattern of abuse of the authority granted them by law and it further appears that liquidation of these corporations should precede entry of the order of dissolution."

[¶ 4] On April 10, 1996, Wishnatsky filed a petition to intervene as a defendant in the lawsuit as a matter of right under N.D.R.Civ.P. 24(a). After hearing, the court denied the motion and Wishnatsky appealed. Wishnatsky argues the district court erred in denying his request to intervene and requests this court to reverse the lower court and grant him full status as a party defendant in this lawsuit.

[¶ 5] N.D.R.Civ.P. 24(a), allows intervention of right to protect an interest in the subject of an action:

"*(a) Intervention of Right.* Upon timely application anyone must be permitted to intervene in an action if: (i) a statute confers an unconditional right to intervene; or (ii) the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[¶ 6] In *Fisher v. Fisher,* 546 N.W.2d 354, 355 (N.D.1996), we summarized the scope of our review of a court order involving a motion to intervene:

"In considering whether a party may intervene of right under Rule 24(a), N.D.R.Civ.P., we review any findings of fact made by the trial court under the clearly erroneous standard of review contained in Rule 52(a), N.D.R.Civ.P. However, the ultimate question of whether a party has a right to intervene in an action is a question of law that is fully reviewable."

[¶ 7] In this action, the Attorney General contends Darold Larson exercises absolute control over the entities, for his personal financial benefit and gain. The other defendants, the Attorney General contends, have acquiesced in the financial abuse of the entities, conduct which would breach their fiduciary duty. The district court found the Attorney General's contentions and support-

ing documentation sufficiently persuasive to grant extreme interim remedies.

[¶ 8] Wishnatsky sought to intervene to protect, among others, his First Amendment right to receive ministry. U.S. Const. amend. I; *see Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 390, 89 S.Ct. 1794, 1806–07, 23 L.Ed.2d 371 (1969) ("[T]he right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences ... may not constitutionally be abridged...").

[¶ 9] Distinct from the defendants, there is no allegation, contention, or evidence Wishnatsky has abused any of the entities for his personal financial gain, nor breached a fiduciary duty to any of the entities. Wishnatsky asserts his First Amendment religious freedom right to receive ministry, ministry manifesting a commitment to the unborn. No one disputes Wishnatsky sincerely holds his religious beliefs and commitment.

[¶ 10] Which defendant shares Wishnatsky's First Amendment interest unencumbered by allegations of personal wrongdoing? Under the Attorney General's allegations, each defendant has personal exposure and interests potentially at odds with Wishnatsky's. The Attorney General's complaint alleges wrongdoing by each of the defendants, seeks to dissolve the corporate defendants, seeks to require the individual defendants to repay allegedly illegal loans and payments, seeks to assess the defendants a civil penalty of $5,000 for each alleged violation of N.D.C.C. Ch. 13–07, and to have the defendants pay all the Attorney General's costs, expenses, and attorney's fees. Thus, each of the defendants individually faces serious personal financial peril, creating the real potential of a conflict.

[¶ 11] Which defendant has the resources to adequately defend in this action after the receiver has seized all the available assets and will not release any for a defense? The defendants have repeatedly told the trial court that the unavailability of funds—the receiver and the court's refusal to release any funds—severely impairs their ability to mount an adequate defense. For example, in their "Motion to Allot Funds for Legal De-

fense," the Boards of Directors of Family Life Services, Inc. and Help and Caring Ministries, Inc. stated, "The corporate funds ... are in the hands of the receiver, leaving the boards of directors without any means to employ counsel."

[¶ 12] At the July 18, 1996, hearing on the "Motion to discharge receiver and Motion to intervene," counsel for the defendants said:

"the collection plate of this ministry is ... under the hands of the receiver ... [Family Life Services] ha[s] to have an attorney.... These attorneys demand that they be paid ... [if] we don't allow a certain amount of funding to pay your attorneys, the attorneys are going to say we quit, and ... those agencies lose by default."

Defendant Darold Larson said, "They're winning by default because we can't even get legal representation."

[¶ 13] In his affidavit, counsel for the defendants stated:

"That without payment for legal services rendered from January 9, 1996 through January 25, 1996, the Attorney General's Office and/or receiver by their non-payment of the said attorney's fees shall be able to cast a very chilling influence upon the said original administrator and the Board of Director's ability to continue to have legal representation in the above-referenced matter."

[¶ 14] Under *Fisher v. Fisher,* 546 N.W.2d 354, 355 (N.D.1996), in considering the right to intervention, this Court reviews any findings of fact under the clearly erroneous standard. But here the trial court made no findings of fact and offered no explanation of its denial.

[¶ 15] Our federal and State Constitutions protect the religious beliefs of both majorities and minorities. *See* U.S. Const., Amend. I; N.D. Const. Art. I, §3. We must never forget the role pursuit of religious freedom has played in the history of our nation. The Attorney General asserts there is no interference with Wishnatsky's religious freedom because pro-life speakers are not barred from the state; the Attorney General has "only" seized the money that would have been used

to bring in pro-life speakers. But a similar First Amendment argument was rejected by the United States Supreme Court when considering the claim that an individual's First Amendment right to free expression was not violated by restricting the amount of money the individual could spend to make views known. *Buckley v. Valeo*, 424 U.S. 1, 19, 96 S.Ct. 612, 634–35, 46 L.Ed.2d 659 (1976) ("A restriction on the amount of money a person . . . can spend on . . . communication . . . necessarily reduces the quantity of expression. . . .").

[¶ 16] Granting Wishnatsky's petition to intervene would not mean in other cases endless interventions would occur. "By the very definition of intervention the intervenor is a party to the action." 59 Am.Jur.2d *Parties* § 170 (1987) (footnotes omitted). Once the interest is adequately represented, no additional intervention need be allowed. N.D.R.Civ.P. 24(a). But here, Wishnatsky's interest is not adequately represented.

[¶ 17] This action may impair Wishnatsky's First Amendment right to receive religious ministry. The potentially different interests, and the inadequacy of the defendants' resources are each sufficient to entitle Wishnatsky to intervene.

[¶ 18] The district court order denying Wishnatsky's motion to intervene as a defendant is reversed and the matter is remanded for entry of an order allowing Wishnatsky to intervene.

[¶ 19] MARING, J., concurs.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 20] I agree with the majority opinion to the extent it would order Martin Wishnatsky's intervention in this lawsuit. I do not agree with the broad rationale of the "right to receive ministry" as the sole basis for that intervention, for I am not convinced of the correctness of the majority's pronouncement Wishnatsky's intervention "would not mean in other cases endless interventions would occur." To the contrary, I believe the trial courts would, in a given case, be hard pressed to attempt to limit the intervenors, each of whom might have a little twist to distinguish them from other applicants for intervention.

[¶ 21] I agree Wishnatsky has a First Amendment "right to receive ministry." Although I do not concede that, alone, is sufficient to intervene, the right coupled with Wishnatsky's peculiar position in this whole enterprise leads me to conclude we should reverse. The dissenters may be "unpersuaded" by "Wishnatsky's expectation of income" from his involvement with these non-profit corporations, but that involvement, different from others who might claim a First Amendment right to receive ministry, when coupled with his claim of the right to receive ministry, convince me he has satisfied the elements extracted from the decision in *Keith v. Daley*, 764 F.2d 1265 (7th Cir.1985) upon which the dissenters rely.

[¶ 22] I would reverse the trial court and allow Martin Wishnatsky to intervene in these proceedings.

[¶ 23] Gerald W. Vande Walle, C.J.

NEUMANN, Justice, dissenting.

[¶ 24] Because Wishnatsky's interests are adequately represented by the existing defendants, I would affirm the trial court's order denying his motion to intervene as a defendant.

[¶ 25] In *Keith v. Daley*, 764 F.2d 1265, 1268, *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985), the United States Court of Appeals for the Seventh Circuit explained the applicant for intervention as of right has the burden of proving each of the following four elements, the lack of any one of which requires denial of the motion:

> "(1) the application must be timely; (2) the applicant must have a direct and substantial interest in the subject matter of the litigation[;] (3) the applicant's interest must be impaired by disposition of the action without the applicant's involvement; and (4) the applicant's interest must not be represented adequately by one of the existing parties to the action."

To intervene as of right the applicant must have a "direct, substantial, and legally protectable interest" in the subject matter of the lawsuit and not merely an interest which is

tangential or collateral to the lawsuit. *Fisher*, 546 N.W.2d at 356.

[¶ 26] Wishnatsky asserts two grounds for intervention which he claims give him a direct, substantial, and legally protectable interest in this lawsuit. First, Wishnatsky asserts he will suffer potential economic loss as a result of the receivership. In the past FLS employed Wishnatsky on a contract basis to write custom computer programs for its credit counseling activities. FLS also occasionally paid Wishnatsky to do research. HCM paid some of Wishnatsky's overhead expenses incurred in providing voluntary assistance to pro-life attorneys. Wishnatsky asserts he has lost these sources of income because the court-appointed receiver will not hire him to do these tasks.

[¶ 27] I am not persuaded Wishnatsky's expectation of income from future contracts with these non-profit corporations constitutes a direct, substantial, and legally protectable interest justifying intervention in this lawsuit. Wishnatsky's interest is a mere expectancy of future income which is both too remote and too contingent to constitute a direct interest justifying intervention. *See Portland Audubon Society v. Hodel*, 866 F.2d 302, 309 (9th Cir.1989) (economic interests in outcome of case not constituting contractual right is not a "protectable interest" justifying intervention as of right); *see also Nastrom v. Nastrom*, 262 N.W.2d 487, 493 (N.D.1978) (potential future earnings are too tenuous to be a property right).

[¶ 28] Wishnatsky urges us to recognize "the tort of intentional interference with prospective economic advantage" and claims, if recognized, that cause of action gives him a direct interest in the subject of this lawsuit justifying intervention. I disagree. If Wishnatsky believes he has a tort action for a wrong committed against him by the receiver, or anyone else, that is a separate and independent matter from this lawsuit by the Attorney General to stop fraudulent practices by the defendants. The rule permitting intervention is not intended to allow for the creation of whole new suits by intervenors, nor can intervention be used as a means to inject collateral issues into an existing action. *Washington Electric Cooperative, Inc. v.*

*Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 97 (2nd Cir.1990). Wishnatsky's economic interest in performing future services for FLS or HCM is not a direct, substantial, and legally protectable interest justifying his intervention in this lawsuit.

[¶ 29] As a second ground for intervention, Wishnatsky asserts he has a First Amendment right to receive ministry from HCM which is jeopardized by the lawsuit. Wishnatsky claims HCM sponsored pro-life speakers and other events that are not provided by any other church in the community. He asserts the receiver's refusal to allow HCM to continue these sponsorships infringes his free speech and religious free exercise rights under the United States Constitution, which justifies intervention in this lawsuit.

[¶ 30] The Free Speech Clause of the First Amendment encompasses a right to receive information and ideas. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346, 355 (1976); *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683, 691 (1972). Similarly, the Free Exercise of Religion Clause under the First Amendment affords protection to observe and practice one's religious beliefs unburdened by state law or regulation, unless there is a compelling state interest to justify the burden. *See, e.g., State v. Patzer*, 382 N.W.2d 631, 635–636 (N.D.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 50 (1986). For purposes of this motion, I assume, without deciding, that Wishnatsky has a direct, substantial, and legally protectable First Amendment interest in this lawsuit. Nevertheless, his motion to intervene must fail because he has not demonstrated his interest is inadequately protected by the existing defendants.

[¶ 31] To be allowed intervention as of right under Rule 24(a), N.D.R.Civ.P., the applicant must demonstrate his interest is not adequately represented by existing parties. In *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3rd Cir.1992), the United States Court of Appeals for the Third Circuit lists three grounds, any one of

which, if demonstrated, will constitute inadequate representation:

"(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit."

The applicant for intervention must provide specific reasons showing that the existing defendants may inadequately represent the intervenor's interests and that disposition of the action will impair the intervenor's ability to protect those interests. *See, e.g., Kiamichi R. Co., Inc. v. National Mediation Bd.,* 986 F.2d 1341, 1345 (10th Cir.1993). Wishnatsky has failed to make the necessary showing on this element.

[¶ 32] The existing defendants have vigorously defended this lawsuit, opposing the Attorney General's allegations and the appointment of the receiver. Wishnatsky makes no claim the existing defendant's interests diverge even slightly from his own interests. The defendant's objectives are to continue the same services and ministry Wishnatsky seeks to preserve as a recipient of them. Thus, Wishnatsky's protectable interests are parallel to those of the existing defendants. Wishnatsky has not alleged any collusion between the existing defendants and the State. Nor has he alleged that the defendants are not diligently defending this lawsuit or devoting sufficient time and attention to the interests he deems important. Consequently, the protectable interests Wishnatsky has in the outcome of this lawsuit are adequately represented by the existing defendants and, for that reason, he is not entitled to intervention under Rule 24(a), N.D.R.Civ.P.

[¶ 33] MESCHKE, J., concurs.

MESCHKE, Justice, dissenting.

[¶ 34] I wholly agree with Justice Neumann's dissenting opinion that Wishnatsky's protectable interests are like those of existing defendants. There are eight persons named as defendants, each "individually and as officer," "employee," or "trustee" of the three named corporate defendants. I write to emphasize that Wishnatsky made *no* claim the existing individual defendants' interests, individually or collectively, diverge from his own.

[¶ 35] As Justice Neumann's opinion clearly explains, an intervenor must show his interests are not adequately represented by existing parties. While this burden is often minimal, if existing parties to the suit have the responsibility of representing the same interest as an intervenor's, a presumption of adequate representation applies. *Chiglo v. City of Preston,* 104 F.3d 185 (8th Cir.1997) (city's residents could not intervene based on city's decision not to appeal ruling that tobacco ordinance was preempted by the federal Cigarette Labeling and Advertising Act). When an intervenor's interests coincide with those of existing parties, they presumptively represent his interests. *Id.* To intervene, a person must be affected in a way significantly different from existing parties. *Id.* Here, the interests of the individual defendants are quite sufficient to pursue the common religious liberty interest asserted by Wishnatsky under the First Amendment.

[¶ 36] As near as I can tell, Wishnatsky's asserted "right to receive ministry" is but an expression of his desire to continue the benefit of other peoples' contributions to his chosen cause—even if those contributions from others may be improperly diverted from the trust accounts of the credit counseling business operated by those contributors. The majority surmises Wishnatsky's "right to receive ministry" is different than those of his allies because his are "unencumbered by allegations of personal wrongdoing" when compared to each individual defendant's "personal exposure" that may be "potentially at odds with Wishnatsky's." I cannot conceive how the religious interest of a supporter would give that "parishioner" more rights to promote "religious contributions" to the common cause from a regulated business enterprise than those active in the business enterprise itself. That notion would allow all sorts of intervention in all kinds of litigation about political, religious, or social causes, whenever a "true" believer thought he could do a better

job than the existing litigants on his side. Judicial administration would become unmanageable.

[¶ 37] This intervenor only argues:

Mr. Wishnatsky has no idea how vigorously, if at all, the boards of directors of FLS and HCM will contest this lawsuit. Likewise, they may not raise or contest the issues that he would consider crucial to the outcome of the case. Certainly [they] do not have the particular interest in *receiving* ministry that he represents.

Wishnatsky does not explain how his particular interest diverges. A proposed intervenor cannot rebut the presumption of representation by merely disagreeing with the legal strategy or objectives of the parties representing the same interest. *Jenkins v. State of Missouri,* 78 F.3d 1270, 1275–76 (8th Cir. 1996) (class members' disagreement with class representatives over litigation strategy not sufficient to show inadequate representation). In my opinion, allowing Wishnatsky to intervene will seriously complicate and delay trial of this case, not expedite its just disposition.

[¶ 38] Herbert L. Meschke